JOHN R. McGAUGHEY *vs.* JOHN C. RICHARDSON.

Suffolk.    January 24, 1889. — March 1, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Exceptions — Sale — Warranty — Consideration — Authority of Agent — Evidence.*

At the trial of an action for breach of a warranty in the sale of a horse by auction, inserted in a bill of sale executed in the name of the defendant, a horse dealer, by his bookkeeper, the bookkeeper's authority to insert the warranty, as well as the fact of a sale by warranty, were in issue, and an advertisement of the sale stating that " each and every horse will be warranted as represented," published by the defendant and read by the auctioneer at the time of the sale, was admitted in evidence, in connection with other evidence tending to show that the bookkeeper had general authority to make out bills of sale of horses sold, and to insert therein written warranties, if any in fact were given by the defendant. *Held*, that the advertisement was competent evidence as tending to show that the horse was sold with some kind of a warranty, and that therefore the bookkeeper was authorized to insert the written warranty.

If, before the payment of the price at which a horse has been sold by auction, and before delivery, a question arises between the seller and the buyer as to the form of warranty to be given, and they agree that a particular form of words shall be written into the bill of sale as a part of the contract, and such are thereupon written into it, and the money is then paid and the horse delivered, the warranty rests upon a good consideration, and will bind the seller; otherwise, if the seller, after the delivery of the horse and payment of the price, voluntarily and without being bound by the contract to do so, inserts the warranty in the bill of sale.

ACTION to recover the price paid by the plaintiff for a horse sold to him by the defendant. The declaration was as follows:

"First Count. And the plaintiff says the defendant owes him one hundred eighty-two and $\frac{50}{100}$ dollars for money received by the defendant to the plaintiff's use.

"Second Count. And the plaintiff says that on or about the seventeenth day of April, A. D. 1886, he bought of the defendant a certain horse, and paid the defendant therefor the sum of one hundred eighty-two and $\frac{50}{100}$ dollars; that the defendant then warranted said horse to be sound and kind on delivery by a written warranty, as will appear in the bill of sale therefor, a copy of which is hereto annexed. And the plaintiff further says, that the defendant gave him until four o'clock in the afternoon of the following Monday to try said horse; that the plaintiff tried said horse, and found him to be unsound at the time of said purchase, in consequence whereof the plaintiff returned said horse to the defendant during the forenoon of said following Monday, and rescinded said sale. And the plaintiff says that in consideration of the foregoing premises the defendant owes him the sum of one hundred eighty-two and $\frac{50}{100}$ dollars, the price paid for said horse.

"Third Count. The plaintiff, being in doubt as to whether to declare in contract or in tort, hereto adds the following count as and for a count in tort, being for one and the same cause of action as the first or second count. And the plaintiff says that on or about April 17th, A. D. 1886, he attended the defendant's auction for the sale of horses at the rooms of the defendant, where the defendant put up a certain horse, representing him to be a little sore forward, and the plaintiff then and there bid upon said horse, and said horse was knocked off to the plaintiff for the sum of one hundred eighty-two and $\frac{50}{100}$ dollars; that before the plaintiff paid for said horse he required the defendant to warrant said horse sound and kind, which the defendant did by a written warranty, as will appear in the bill of sale thereof, a copy whereof is hereto annexed; that the defendant gave the plaintiff until four o'clock of the Monday following to try said horse; that the plaintiff took said horse and tried him, and found him not sound, but wholly unsound and valueless to the plaintiff, in that he was foundered, in consequence whereof the

plaintiff during the forenoon of said following Monday returned said horse to the defendant, and rescinded said sale; but the defendant wholly refused to take said horse, or to give back to the plaintiff the purchase money. And the plaintiff says that, if said horse had been as represented by the defendant, said horse by his appearance would have been worth to the plaintiff the sum of three hundred dollars. In consequence of the foregoing premises, the plaintiff says that by the loss of the purchase of such a horse as said horse was represented to be by the defendant, and the taking of said horse to the plaintiff's stable, and the return thereof to the defendant's stable, and the care of said horse, and the annoyance and vexation of rescinding said sale, he has suffered great damage, to wit, the sum of four hundred dollars."

. A copy of the written warranty annexed to the second and third counts of the declaration was as follows:

"Boston, April 17, 1886. Mr. McGaughey bought of J. C. Richardson, . . . at the Combination Sale Stables. (No. 17, White-load.) Warranted sound and kind on delivery.

| | |
|---|---|
| Chest. horse . . . . . . . . . . | $182.50 |
| Credit by cash . . . . . . . . . | 15.00 |
| | $167.50 |

Received payment. J. C. Richardson, by J. D. R."

Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, which, so far as material, was as follows.

After the case was opened, and before any evidence was introduced, the defendant asked the presiding judge to require the plaintiff to elect upon which of the three counts he would proceed, claiming that the count in tort, which was declared to be for the same cause of action as the first or second count, was inconsistent with the second count, and did not in itself sufficiently or properly set forth a cause of action in tort, and, as the first count contained no bill of particulars, it must be taken to refer to the cause stated in the second count; but the judge declined to require the plaintiff so to elect at that time. Subsequently, upon a further examination of the declaration, the presiding judge stated to the plaintiff that his construction of the declaration then was, that the first and third counts referred to the

second count, and that he should rule that the plaintiff was limited in his right to recover to the written warranty set forth in his second count; and the plaintiff thereupon acquiesced in that ruling. Before the judge had ruled that the plaintiff must be confined to his count upon the written warranty, the plaintiff offered in evidence an advertisement, published in the Boston Globe, of the proposed sale of a lot of horses, among which was the horse in question, which advertisement was admitted, against the defendant's objection, and so far as material was as follows: "Auction Sale. By J. C. Richardson, Combination Sale Stables, . . . Boston. Special and positive sale on Saturday, April 17, at 10.30 o'clock A. M., sharp, of two carloads of Canada and one carload of Illinois horses, just arrived. . . . Any one in want of first-class reliable stock should not fail to attend this sale, as in all our sales we never withdraw a horse when offered, and each and every horse will be warranted as represented, or money refunded, and a satisfactory trial given. . . . We shall also receive on Saturday morning one carload of extra-fine driving, draught, saddle, family, and general purpose horses, . . . and will offer them at 12.30 P. M., sharp, consisting of . . . Nos. 17 and 18, pair of chestnut horses, seven and eight years old, fifteen and three tenths hands; two thousand six hundred and thirty pounds; extra broke, single or double; a first-class team for farm, express, or general business use. Henry S. Harris, Auctioneer." No question was made as to the identity of the advertisement, nor that it was inserted by the defendant.

After the ruling confining him to the second count, the defendant objected to the reading of the advertisement, and to comments by plaintiff's counsel upon its materiality, and asked the judge to rule it out, now that the first and second counts were out of the case; but the judge refused to exclude it, and the defendant did not except to this refusal.

The plaintiff then testified, in substance, that, in consequence of having seen the advertisement, he attended the sale; that, when the horse in question was led up to the auctioneer's stand, the defendant said, "This horse appears a little sore forward"; that the auctioneer read an advertisement identical with that seen by the plaintiff, and said, "This is No. 17, what will you bid for him, gentlemen?" that the horse was knocked down to

him for $182.50; that after paying fifteen dollars to the clerk, as a deposit, he received from him an unreceipted bill, at which he looked, and saw that he had credit for that amount; and that, about fifteen or twenty minutes later, he " started towards the clerk's desk, and told him I guess I would take my horse, drawing my bills from my pocket, and asking him what kind of a warranty I was going to get with this horse. The clerk takes the bill from me, and wrote in on it, — was writing in on it, — and I turned to the auctioneer, and I says, ' This horse is a good worker?' ' Of course he is a good worker.' ' How long a trial will I have?' ' Until four o'clock, Monday.' Then the clerk points to what he had written in as the warranty, the words, ' Sound and kind on delivery.' Then he receipted the bill, and reached it to me, and I paid him the balance."

The plaintiff further testified, that, after taking the horse home, he discovered it to be unsound, and that, in consequence thereof, on the following Monday he returned it to the defendant, who refused to take it back, whereupon the plaintiff left it in the defendant's stable.

The defendant testified that he first saw the receipted bill on the Monday after the sale; that he did not authorize any one to write " Warranted sound and kind on delivery " in it; that at the time of the sale he said to the auctioneer, and to the crowd, " This horse is sore, and we will withdraw the warranty, and sell him for unsound." On cross-examination the defendant testified that the warranty alluded to as withdrawn was that contained in the advertisement relating to the pair, Nos. 17 and 18; that the clerk had written warranties in other bills of sale of horses when told to do so by him, and that it was his business to do so; that the bookkeeper kept the books, and the account of the sales, made the bills of sale, and collected the bills; that he, the defendant, was not always present in the auction-room within ready reach of the auctioneer or the clerk at all times during the sale; that if he was not there, and the clerk knew that the horse was sold with a warranty, he would have the right to put that in the bill of sale.

John D. Rust, called by the defendant, testified that, at the time of the sale, he was the defendant's bookkeeper; that the words " Warranted sound and kind on delivery " were written

by him a few minutes after the bill was receipted, and the balance of the price was paid by the plaintiff in consequence of plaintiff's stating to him, " Mr. Richardson said this horse was warranted, and being warranted to be put on the bill"; and that he had no authority from the defendant to warrant this horse.

The defendant asked the judge to rule, among other things not material, as follows:

" When the horse was knocked down to the plaintiff by the auctioneer for the sum bid, the plaintiff being the highest bidder therefor, the contract was complete, and if the insertion of the words ' Warranted sound and kind on delivery' was made in the bill without the defendant's consent, such bill would not bind the defendant as and for a warranty."

The judge refused so to rule, and instructed the jury, among other things not excepted to, after reading the bill of sale containing the alleged warranty, as follows:

" The parties agree that the horse was bought. It is not in dispute that this paper was delivered to the plaintiff, but the defendant comes in and says, in the first place, that this paper was no part of the transaction, that it was delivered after the contract was made, and therefore is not binding upon the defendant, because he was not paid anything for it. On that, gentlemen, I instruct you, as matter of law, that if, before the money was paid and the horse delivered, a question arose among the parties as to what should be the form of the warranty, and it was settled by writing in these words, ' Warranted sound and kind on delivery,' and that was a part of the understanding under which the money was paid by the plaintiff to the defendant, then it was a part of the trade, notwithstanding the fact that you may find that there had been no actual agreement to warrant before that time. If, however, after the trade was completed, not only by the agreement upon the terms of the sale, but if the horse had been delivered and the money had been paid, and this putting in here was an afterthought, and the defendant was not bound by the agreement of the sale to insert it, but everything had been done, and then that was put in, the money paid, horse transferred, no question about warranty, but the defendant chose to put that in afterwards, then

it was no part of the contract, and he is not bound by it. The sale is not complete by the agreement of the terms of the sale, it must be carried out by the payment of the money, or the consideration, whether money or otherwise, — in this case by the payment of the money, and by the delivery of the horse, — and if, before that had been done, a question having arisen, if it did arise, as to what kind of a warranty, if anything, the plaintiff should have, and upon that arising this was done, then it is a warranty that is a part of the sale."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*S. J. Thomas & L. M. Clark*, for the defendant.

*H. E. Swasey*, (*J. V. Beal* with him,) for the plaintiff.

FIELD, J. It appears that after the case was opened, and before any evidence was offered, the defendant asked the court to require the plaintiff to elect upon which of the three counts he would proceed; but the court declined to require the plaintiff to elect at that time. Subsequently, the court ruled that the plaintiff "was limited in his right to recover to the written warranty set forth in his second count, and the plaintiff thereupon acquiesced in that ruling." Before this ruling was made, the plaintiff had put in evidence, against the objection of the defendant, an advertisement, which the defendant had caused to be published in a newspaper, of the proposed sale of a lot of horses, in which was included the horse bought by the plaintiff. After the plaintiff was confined by the ruling to the second count, the defendant asked the court to exclude the evidence of the advertisement, but the court refused, and the exceptions state that " the defendant did not except to this refusal."

The complaint of the defendant is, that, on a correct construction of the whole declaration, the advertisement ought never to have been admitted in evidence. It is conceded that, if the foundation of the action had been, not a breach of a written warranty, but fraudulent misrepresentations, the advertisement would have been admissible; but it is said that the action proceeded solely on the ground that the plaintiff had rescinded the sale on account of the breach of a written warranty, and that evidence of the advertisement could not be introduced for the purpose of enlarging or varying the written contract.

The bill of sale of the horse contained the words, " Warranted sound and kind on delivery," and was signed in the name of the defendant by his bookkeeper. The plaintiff had bid off the horse at an auction held by the defendant, at which the advertisement had been read as containing the terms on which the horses were to be sold. The defendant's bookkeeper, after the horse had been struck off to the plaintiff, required him to make a deposit of fifteen dollars, and he gave to the plaintiff an un-receipted bill of sale of the horse, containing the price, with a credit of fifteen dollars. Apparently the sale was for cash. The testimony of the plaintiff tends to show that, before the horse was delivered to him, he offered to pay the remainder of the price to the bookkeeper, and asked the bookkeeper what kind of warranty he was to have, and that the bookkeeper took the bill of sale, wrote in the words warranting the horse, received the plaintiff's money, receipted the bill in the name of the defendant, and delivered it to the plaintiff.

One question in the case was whether the bookkeeper was authorized by the defendant to give a written warranty; and besides the evidence of his authority generally, there was distinct evidence that he had authority from the defendant to give a written warranty if the horse had been sold with an oral warranty. The advertisement in connection with the other testimony tended to show that the horse was sold with some kind of a warranty, and that therefore the bookkeeper was authorized to give a written warranty in behalf of the defendant. Besides, if the horse was sold with an oral warranty that he was sound and kind, the insertion of these words in the bill of sale had only the effect of making the written paper conform to the actual contract. *Spalding* v. *Conant*, 146 Mass. 292.

The next exception argued is to the refusal to rule that, " when the horse was knocked down to the plaintiff by the auctioneer, for the sum bid, the plaintiff being the highest bidder therefor, the contract was complete"; and the contention is, that the insertion of the warranty in the bill of sale after this would not bind the defendant, even if made by his authority, because there would be no consideration to support it. Upon this question the instructions of the court were correct. Those instructions were, in substance, that if, before the money was paid and the horse

was delivered, the question arose between the parties as to the form of the warranty to be given, and the parties agreed that these words of warranty should be written into the bill of sale as a part of the contract, and they were so written in, and the money was then paid and the horse delivered, the warranty would rest upon a good consideration, and would bind the defendant; but that if, after the horse had been delivered and the money paid, the warranty was inserted by the defendant in the bill of sale, and the defendant was not bound by the contract of sale to insert it, but he voluntarily chose to put it in, then the defendant was not bound by it.

We think there was evidence for the jury, not only that the horse was actually sold with the warranty declared on, but also that the bookkeeper had authority from the defendant to give in his behalf a written warranty of a horse sold by him. These are all the exceptions argued by the counsel for the defendant, and the entry must be,                    *Exceptions overruled.*