HALL and Others *v.* GAVITT.

The sale of offices is against public policy, and will not be sustained by the courts.

An agreement, for a fixed sum, to permit or authorize another to perform the functions, and receive in return the whole of the emoluments of an office, will not be enforced in favor of either party.

Where the compensation of an office arises from fees, and is uncertain in amount, if the principal, in constituting his deputy, reserves a sum certain out of the fees, the contract is valid.

But where the agreement is, not to pay out of the profits, but to pay

generally, a certain sum at all events, the appointment of a deputy under such contract is void, and a bond conditioned for the payment of such sum is void.

APPEAL from the *Vanderburgh* Circuit Court.

HANNA, J.—*Gavitt* sued *Hall* and others, averring that on, &c., he was the legal and acting sheriff of said county, and on that day appointed in writing said *Hall* as his deputy, taking from him and the other defendants, as his sureties, the bond sued on, which is conditioned that said "*Hall* shall safely keep and pay over to the proper person, or authority entitled thereto, all moneys that may come into his hands as such deputy, &c., and diligently and faithfully discharge all his duties," &c. It is further averred, that he did not comply with the condition of said bond, in this, that on, &c., an execution issued from, &c., came to his hands, as such deputy, which was directed to said *Gavitt* as sheriff, &c., and that he collected on the same the sum of 600 dollars, which he appropriated to his own use, and failed to pay over, &c., and that he, said plaintiff and his sureties, had been sued upon his official bond as sheriff for said sum so collected, &c., and a judgment recovered therefor.

The defendants answered:

1. Admitting that said *Gavitt* was on, &c., sheriff, but averring that he corruptly and illegally sold and transferred said office to said *Hall*, for and in consideration of the sum of 800 dollars, then paid to him by said *Hall*, and that in pursuance of said corrupt and illegal sale of said office they executed said bond; and that said plaintiff accepted the same in pursuance of said corrupt and illegal sale, &c.

2. The next paragraph of the answer is similar to the first, except that it charges that, in order to give the said sale an appearance of legality, and in order corruptly and fraudulently to evade the law, the plaintiff made the appoinment of deputy, &c.

3. This paragraph sets up the facts except that it charges the sale to have been of the office of deputy to said *Gavitt*, and the price paid the same, by the execution by said *Hall* of his note therefor at eight months, with security.

4. This paragraph sets up the same facts as the second, with the addition, that it was so corruptly, &c., agreed that said *Hall* was to collect and receive to his own use all the emoluments and fees of said office, and might perform all the duties during the residue of the official term of said *Gavitt*, &c.

Demurrers were sustained to these several paragraphs for want of sufficient cause, &c.

There is no brief for the appellee on file.

The main question presented by the appellant is in reference to the rulings of the Court on demurrers; involved in which is the inquiry whether a sheriff can sell his office, or that of a deputyship under him, and if not, whether the invalidity of such contract should prevent a recovery by the principal upon a bond taken in pursuance thereof for the discharge of the duties of the office.

In *England* the sale of offices is forbidden by statute, and in this country has been treated and considered as being against public policy. *Ellis et al.* v. *The State et al.*, 4 Ind. 1; 3 Kent's Com. 363; Black Com. 2 B. 37.

Strictly speaking, perhaps, there could not be a sale of the office of sheriff by an incumbent in this State. For the reason that it is a right to exercise a public function, and to take the fees and emoluments belonging to it. A sale is an agreement by which the seller gives a thing and passes the title to it in exchange for a certain price, which the buyer agrees to pay. To make a complete sale there must be a thing in commerce which is the object of the contract, the title to which one is to part with, and the other to acquire. Notwithstanding any practice that may have arisen, certainly the principles

upon which our government is founded, the theory, does not favor the supposition that offices are subjects, or objects, of commerce. The sheriff's office is not such a commercial commodity as will enable the incumbent to transfer the title to another. Whatever arrangement he might attempt to make as to the discharge of its duties, they would still have to be discharged in his name, and he would be responsible therefor. But nevertheless, it appears to us, there might be a contract, in regard to the discharge of the duties of the office, that would be against public policy, and if there was any consideration therefor, it could not be enforced in a Court of justice. The agreement for a fixed sum to permit, or authorize, another person to perform the functions, and to receive in return the whole of the emoluments, &c., of the office, would, in our opinion, be a contract that could not be enforced; either to compel the performance of the duties, or to recover the stipulated price, in a suit by the incumbent against the deputy, or employee; nor in a suit by the employee against the principal to compel him to deliver the business into his hands, and permit him to receive the fees, &c. This results from the theory that the plaintiff is selected because of his supposed fitness for the position, both in reference to his capacity to discharge the duties, in which the public as well as private persons, have an interest; and his responsibility for the faithful and honest performance of his trust. He can not fully relieve himself from these duties and responsibilities in but one way, and that is to divest himself of his official character.

It is true, there is a statute authorizing a sheriff to appoint a deputy, who may "perform all the official duties of such principal, being subject to the same regulations and penalties." But it is also enacted in the same statute, that "such principal shall be responsible for all the official acts of his deputy." 1 R. S. 256. This is but carrying out by legislation the general theory above referred to.

But it is said, that although an appointment thus procured and made, might be illegal, and the results we have stated as to suits in reference to the stipulations of the same, might legitimately follow, yet for a failure of the deputy to discharge the duties entrusted to him, a suit should lie upon a bond given to secure the discharge of such duties.

In the case at bar, the corrupt agreement in relation to the appointment or employment of *Hall*, and the sum to be paid by him, are so connected, by the averments, with the execution of the bond sued on, that we are not able to perceive how they can be so disconnected, and made separate contracts, as to render the one valid, whilst the other is treated as invalid. If the bond was not really a part of such corrupt contract—a point we need not discuss—it appears to have risen out of such corrupt proceeding, to have been produced by it, insomuch that we are of the opinion a suit by *Gavitt*, against *Hall* and his securities, based thereon, can not be maintained. Chitty on Cont. 657, and authorities cited; *Gray* v. *Hook*, 4 Comst. 454; *Godolphin* v. *Tudor*, 2 Salk. Rep. 468; *Laying* y. *Paine*, Willes' Rep. 571; *Parsons* v. *Thompson*, 1 H. Blk's Rep. 322.

If the acts of *Hall* should so involve *Gavitt* as to exhaust his official bond, we do not intimate any opinion as to the right of third persons, who may have suffered by such acts, to resort to the bond now sued on; nor as to the sufficiency of the complaint in this case, in respect to the absence of an averment that *Gavitt* had paid the judgment alleged to have been recovered because of the defalcation of *Hall;* nor do we intimate any opinion as to whether *Hall* may be liable in any other form of action to *Gavitt*.

Afterwards, a petition for a rehearing was filed herein, urging that the transaction was merely the appointment of *Hall* as a deputy, and that the admission to that effect in the

bond estopped the appellants from setting up any matter in contradiction, &c.

Without pausing to inquire whether a bond, based upon an illegal consideration of the character here averred to exist, could operate as an estoppel, we are of opinion, that, even viewing it as having been executed in consequence of such appointment, the facts preceding and producing such appointment could be shown. Those facts, as set forth in the answer, disclosed an illegal transaction, in reference to said appointment, or office of deputy.

The distinction which exists between the legal and illegal appointment of a deputy, appears to be this: In an office where the compensation arises from fees, and· is uncertain, if the principal reserves a sum certain out of the fees, the contract is valid; for the deputy would not pay unless the receipts should amount to so much. The business being transacted in the name of, and the fees belonging to the principal, it would only be reserving a part of his own, and giving away the balance to another; but where the agreement is not to pay out of the profits, but to pay generally, and a certain sum at all events, a bond, conditioned for the payment of such a sum, is void. The statute, 5 and 6 Edward 6, c. 16 §§ 2 and 3, makes provisions as to deputies, as well as principals, under which, decisions have been made to the effect above indicated. *Godolphin* v. *Tudor*, Salk. 468; *Gillford* v. *Dr. Cardonell, id.* 466; 2 Selw. Nisi Prius, 483.

It should be presumed, if any presumption arises on the subject, that the amount of fees fixed by the law makers was intended by them as but a reasonable reward for the care and trouble, and an encouragement to the fidelity of the officer. If one should agree to pay for such office a fixed sum greater than such fees, &c., would justify, pernicious consequences, of a serious character, might arise, such as corruption and extortion, whereby said sum might be made up. It is, there-

fore, against public policy to permit such contracts to have binding force.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded. The petition for a rehearing is overruled.

*Charles Denby, James G. Jones,* and *James E. Blythe,* for the appellants.

*Asa Iglehart* and *Charles E. Marsh,* for the appellee.