# WABASH RAILROAD COMPANY ET AL. *v.* GRATE.

[No. 7,966. Filed June 19, 1913.]

1. FRAUD.—*Actions.*—*Complaint.*—A complaint by a property owner against a railroad company for damages resulting from defendant's removal of its shops, etc., to another city, is insufficient on the theory of fraud, notwithstanding some of its averments indicate that it proceeds on the theory that plaintiff was induced to purchase his property by defendant's fraudulent representations, where it contains no averments that such representations were false, or that they were fraudulently made knowing them to be false, or that they were recklessly made not knowing whether they were true, or that they were made for the purpose of cheating or defrauding plaintiff. pp. 588, 589.

2. FRAUD.—*False Representations.*—*Existing or Past Facts.*—*Representations as to Future Acts.*—Alleged statements, representations, acts and conduct which were not made with reference to an alleged existing or past fact, but which relate to and are repre-

sentations, statements and conduct with reference to a thing to be done in the future, are insufficient grounds on which to predicate fraud.    p. 589.

3.  CONTRACTS.—*Complaint.—Presumptions.*—Where it is not alleged in the complaint that the contract relied on was in writing, it will be presumed to be verbal.    p. 591.

4.  CONTRACTS.—*Actions.—Variance.*—Where plaintiff alleges an oral contract, he is bound thereby, and will not be permitted to recover on proof showing that it was in fact in writing.    p. 595.

5.  EVIDENCE.—*Parol Evidence.—Written Contract.*—Where a written contract appears to be complete, it is presumed to be the repository of the final intention and agreement of the parties, and it cannot be changed, modified, added to or subtracted from by proof of any prior or contemporaneous parol agreement, except as to the consideration, which may be contradicted by parol, unless from the language of the writing it appears that the stipulation as to the consideration is contractual.    p. 595.

6.  RAILROADS.—*Location of Division Buildings.—Maintenance.— Contract.—Evidence.*—In an action for damages against a railroad company on account of the removal of its shops, etc., to another city, plaintiff alleging that he purchased certain real estate in the town where such shops, etc., were originally located because of defendant's representations that it would locate and maintain its shops, etc., there, evidence of certain written contracts, neither of which contained any agreement that defendant would permanently maintain its shops, etc., in such town, and the representations of defendant's officers as to the intended permanency of such location of shops, etc., was insufficient to support a judgment for plaintiff on the theory of a contract between defendant and plaintiff binding defendant to maintain its shops, etc., at such town. p. 597.

From Superior Court of Allen County; *Owen N. Heaton,* Judge.

Action by George Grate against the Wabash Railroad Company and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Edwin P. Hammond, William V. Stuart, Dan W. Simms, Allison E. Stuart* and *Fred E. Zollars,* for appellants.

*Thomas L. Wickwire* and *Colerick & Hogan,* for appellee.

HOTTEL, P. J.—This is an appeal from a judgment recovered by appellee in an action brought by him in the Dekalb Circuit Court against appellants to recover damages

alleged to have resulted to appellee on account of the removal by appellant railroad company from the town of Ashley in said county, its division terminal and headquarters, and the resulting abandonment and dismantlement of the roundhouse, shops and other structures necessary to and connected with said division terminal at said place. The complaint is in a single paragraph a demurrer to which was overruled. Appellants filed a separate and several answer in six paragraphs. The first paragraph of this answer was a general denial; the second paragraph alleged that the contracts were not in writing; the third and fourth paragraphs each set up the six years' statute of limitations; the fifth paragraph alleged that the contracts were without consideration and the sixth paragraph alleged performance of the contracts sued on. The sufficiency of the special answers was not questioned by demurrer, and the only reply thereto was a general denial. There was a trial by jury and a finding and a general verdict against both appellants. With the general verdict the jury returned answers to interrogatories. Each appellant filed in the following order a motion for judgment on the answers to interrogatories notwithstanding the general verdict, a motion for a new trial, and a motion in arrest of judgment. These several motions were each overruled and each appellant saved an exception to each ruling. These rulings and the ruling on the demurrer to the complaint are each assigned as error and relied on for reversal.

Many objections are urged against the sufficiency of the complaint and in their discussion of these objections and the other errors relied on, appellants have presented several questions to which there seem to be no decisions of either of the courts of appeal of this State directly applicable. In some of the objections to the complaint questions are presented concerning which we are not free from doubt, but assuming, without deciding, that the complaint states a cause of action, we have reached the conclusion that the

evidence wholly fails to support the theory upon which it must be held to be predicated, and for this reason limit our discussion and decision of the questions presented to those alone which involve the theory of the complaint and the sufficiency of the evidence to support such theory.

The material averments of the complaint are in substance as follows: In January, 1892, appellant railroad company owned and operated certain lines of railroad, and desired to build an additional line from the town of Montpelier, Ohio, through Indiana, to the city of Chicago, and to obtain at some suitable place along such proposed line, and adjacent thereto, a sufficient quantity of land (not less than 100 acres) about one mile in length on which to establish its division headquarters and terminal, and erect depots, roundhouse, side tracks, yards and all other necessary buildings in connection therewith. To have acquired such land from the owners by direct purchase or by condemnation, would have cost such company a price far in excess of the actual acreage value thereof, because of the manner in which the farms, comprising the land, would have been cut up, and to avoid paying such excessive price, and as an agency through which to purchase such land at a reasonable price, appellant railroad company on March 14, 1889, through its officers and directors procured and caused the organization of the appellant, Indiana Improvement Company. The articles of incorporation of such company stated that it was organized for the purpose of buying and selling lands, etc., but the real purpose of organizing such corporation was to enable appellant railroad company to acquire through its agency the land needed by it, at a reasonable price, and at the same time enable the organizers and stockholders of the improvement company to make a profit by platting into town lots and selling the lands purchased by it and not used by the railroad company, it being agreed by the railroad company that in consideration of the anticipated benefits to be derived by it from said transaction it would construct and perma-

nently maintain on the land purchased by it all of the offices, buildings and structures aforesaid and to fully equip, operate and maintain said division headquarters thereon, thereby giving to said town lots a permanent and enhanced value, and also enabling appellant improvement company to more readily dispose of the same at a profit. The officers, directors and stockholders of the improvement company, were, with but one exception, also officers and directors of the railroad company, and 7/8 of the capital stock of such improvement company was owned by officers, directors and stockholders of the railroad company. The improvement company was practically an auxiliary to the railroad company and was controlled and governed by the same men, and it with full knowledge and consent of the railroad company purchased and acquired title to more than seven hundred acres of land in the counties of Steuben and Dekalb, and platted thereon the town of Ashley, and procured the same to be incorporated as a town under the laws of the State of Indiana, and conveyed to the railroad company, 112 acres of said land for the uses above specified, which land was conveyed for its actual acreage cost to said improvement company, which company, with knowledge of the railroad company, and for the purpose of inducing appellee and others to purchase lots and invest money in the improvement and development of the town of Ashley, represented and agreed with appellee and others that if they would purchase lots and improve them, said railroad company would locate and permanently maintain all of the buildings, structures, etc., aforesaid and would fully equip, operate and maintain said division terminal and headquarters at said point; that the railroad company would give employment to a large number of persons at said place, who, with their families, would be sufficient in number to give to said town a population of from 6,000 to 10,000 persons, all of whom would become permanent residents thereof. Said promises, undertakings, inducements and agreements

thus made by the improvement company were all made with the full knowledge and consent of the officers and directors of the railroad company, and were all ratified and adopted by it as its personal promises, agreements and undertakings, and were all made for the purpose of inducing appellee and others to purchase said town lots and to erect buildings thereon.   As a further inducement to appellee, the railroad company did establish a division headquarters and division terminal at said point and did erect certain offices, buildings, structures, etc., thereby giving employment to a large number of persons who became and were inhabitants of said town, and also, thereupon agreed with appellee and publicly announced that it was the purpose and intention of appellant railroad company to keep and perform each and all of the several promises, agreements and undertakings of said Indiana Improvement Company.   Relying thereon, and induced thereby, appellee purchased a certain lot in the town of Ashley, to wit:   Lots seven and eight in Block 38, Dekalb County, Indiana, and paid to said Indiana Improvement Company therefor $300, and erected on said lot a building of the value of $1700, which sum was actually expended in its construction by appellee in reliance upon said several promises and agreements of appellants, and appellee in all respects complied with his part of said agreement; that the railroad company, in violation of its agreements abandoned said point as a division terminal and headquarters, demolished and removed its said roundhouse from said point, and dismantled its shops, and wholly abandoned the said town of Ashley to appellee's damage in the sum of $1,500.

Some of its averments indicate that the complaint proceeds on the theory that appellee was induced to purchase and improve the lots in question by the fraudulent

1.   representations, acts and conduct of the agents and officers of the appellant companies, but when carefully read, it will be seen that it is not sufficient on this

theory. There is no averment that such representations were false or that they were falsely or fraudulently made knowing them to be false or that they were recklessly made not knowing whether they were true; nor is there any averment that they were made for the purpose of cheating and defrauding appellee. *New* v. *Jackson* (1912), 50 Ind. App. 120, 95 N. E. 328 and authorities there cited.

It also appears that the statements, representations, acts and conduct relied on as the inducement to appellee to purchase and improve the lots in question related to and were representations, statements and conduct with 2. reference to a thing to be done in the future, viz., the location and permanent maintenance of the buildings, etc., at Ashley and were not made with reference to an alleged existing or past fact, and, hence, as averred furnished insufficient ground upon which to predicate fraud. *Bennett* v. *McIntire* (1889), 121 Ind. 231, 234, 23 N. E. 78, 6 L. R. A. 736, and authorities there cited; *Robinson* v. *Reinhart* (1894), 137 Ind. 674, 682, 36 N. E. 519; *Smith* v. *Parker* (1897), 148 Ind. 127, 132, 133, 45 N. E. 770; *Fouty* v. *Fouty* (1870), 34 Ind. 433, 435, 436; *Burt* v. *Bowles* (1879), 69 Ind. 1, 6; *Kain* v. *Rinker* (1891), 1 Ind. App. 86, 89, 27 N. E. 328; *Ayers* v. *Blevins* (1901), 28 Ind. App. 101, 104, 62 N. E. 305.

We do not mean to be understood as saying or holding that, under the facts pleaded, a complaint might not be so worded as to make it sufficient on such theory. Upon 1. this question we express no opinion. It is sufficient to say that the complaint does not proceed on the theory that the agents and officers of the appellant improvement company, for the purpose of inducing the appellee to purchase and improve the lots in question, *falsely* and *fraudulently* represented that it was *then the intention* of the railroad company to permanently locate its division and the necessary shops and structures at said town of Ashley, and that the said improvement company had in fact made

a contract with the appellant railroad company for the bene-
fit of the purchasers of the lots in said town of Ashley
wherein such railroad company had agreed to permanently
locate its division buildings, and structures and permanently
maintain its division shops, etc., at said town, when in truth
and in fact it was *not then the intention* of such railroad
company to permanently locate its division shops, structures,
etc., at said town, and when in truth and in fact the im-
provement company *had no such contract or agreement with
the railroad company for the permanent location of said
division buildings, shops, etc.* Nor is it averred that the
railroad company authorized and permitted such statements
and representations by the improvement company, knowing
them to be false or by its officers and agents made the same
or similar statements, knowing them to be false and for the
fraudulent purpose of aiding and assisting the improvement
company in inducing the appellee and others to purchase
and improve lots in said town and to cheat and swindle such
purchasers. On the contrary, the complaint proceeds on the
theory of a valid binding agreement between the appellants
made for the benefit of the purchasers of lots in said town
of Ashley, wherein and whereby it was agreed by the rail-
road company that if the improvement company would sell
and convey to it the ground necessary for its buildings for
division purposes at the price per acre originally paid by
such improvement company, that it would in consideration
therefor agree to erect and permanently maintain its build-
ings, structures, etc., thereon, and that pursuant to this
arrangement between the two appellants, the improvement
company, sold the lots in question to appellee and with the
knowledge, consent and acquiescence of the railroad com-
pany, agreed with appellee that the railroad company would
permanently maintain its division and necessary shops,
buildings, etc., at said town.

Appellee in his brief concedes that the theory of the com-
plaint above indicated *"is one of the* theories upon which

the appellee predicates his right of recovery'', but contends that ''in addition to the right of appellee to recover upon said oral contract'' that the public declarations of the highest officials of the two companies and their acts and conduct made and performed with the knowledge on the part of each, ''that the people were being informed of the existence of said oral contract and were so informed for the purpose of inducing such purchasers to act thereon and purchase lots, created a contract between said companies and such purchasers upon which such purchasers had a right to rely, such declarations, acts and conduct being used with the knowledge of each of said companies as inducements for the sale of such lots to the appellee and others.'' We need not express any opinion as to the correctness of this contention because appellee's position, as will be hereafter disclosed, is not strengthened thereby.

It is not alleged that such contract or that any of the contracts or agreements relied on were in writing, hence they will be presumed to be verbal. *Langford* v. *Freeman* (1877), 60 Ind. 46, 50; *Krohn* v. *Bantz* (1879), 68 Ind. 277, 279; *Carlisle* v. *Brennan* (1879), 67 Ind. 12, 18; *Wolke* v. *Fleming* (1885), 103 Ind. 105, 106, 2 N. E. 325, 53 Am. Rep. 495.

The jury by its answers to interrogatories expressly found that the promoters or syndicate of the ''Indiana Improvement Company'' a few days before the incorporation of such company entered into a *written agreement* with the appellant Wabash Railroad Company of which the following is a copy:

''St. Louis, Mo., March 17, 1892.

Mr. Chas. M. Hays, General Manager.

Dear Sir:—On behalf of the syndicate formed on the 9th day of Feby.. 1892, for the purpose of buying land along the Chicago-Detroit extension of the Wabash Railroad, composed of James F. How, Chas. M. Hays, Gary, Wells H. Blodgett, O. D. Ashley and others. One of the principal objects of the above syndicate is to lay out and plat a townsite at the division point to be

established by the Wabash Railroad Company. The syndicate having secured options on a tract of land lying along said railroad line commencing at the principal street or road, running north and south in the present town of Hudson, thence running east of said street one and a fourth miles.

In consideration of the advantage and profits to be derived by the syndicate in location of the Company's depot, terminals and shops on the grounds above mentioned, I make you the following proposition, subject to the approval of the executive committee: First: We will sell to the Railroad Company whatever ground they may need not to exceed one hundred acres, at the same price we pay, at any time before the townsite is platted;  *  *  * .

*Provided, however,* that the depot shall be located at least 2,500 feet east of the above mentioned Hudson road (which is on Township line) and that the shops shall be located east of the Depot. Respectively submitted, Theo. Gary, Manager for the Syndicate.

Accepted. The Wabash R. R. Co. By Chas. M. Hays, Gen'l Manager.

March 17, '92.''

The jury also found by its answers to interrogatories the following facts: Appellant "Indiana Improvement Company" was incorporated on April 2, 1892. On May 2, 1892, after its incorporation the board of directors of such improvement company in a meeting of such directors approved said contract above set out and made a record of their approval. This was the only contract relating to said matter shown by the records of said improvement company. Pursuant to said contract the improvement company on Aug. 13, 1892, by a deed signed by its president and secretary conveyed and warranted to appellant railroad company 96 and 24/100 acres of land, the consideration expressed in said deed being $8708.50 which deed was duly recorded on December 10, 1892. Theodore Gary was the manager of said improvement company from sometime in 1892 to sometime in 1896 and as such, after various verbal conversations with appellee entered into a *written contract* with him of which the following is a copy:

"This contract made and entered into this 18th day of January, 1893, by and between the Indiana Improvement Company, the seller, a corporation organized under and by virtue of the laws of the State of Indiana, in that behalf enacted, and George Grate, of the County of Dekalb, State of Indiana, the buyer: *Witnesseth*, that the seller has sold to the buyer, and the buyer has purchased from the seller, the following described real estate situate in the Town of Ashley, County of Dekalb, State of Indiana, to-wit: Lots seven (7) and eight (8), in Block Number Thirty-eight (38) at and for the price and sum of Three Hundred Dollars ($300.00), to be paid as follows: One Hundred Dollars cash, the receipt of which is hereby acknowledged by the seller, and which is a part of the consideration of the sale, and the balance whereof is payable in the following manner, to-wit: One Hundred Dollars on or before one year after date, and One Hundred Dollars on or before two years after date, as evidenced by two promissory notes of even date herewith, without any relief from valuation or appraisement laws, with interest at the rate of six per cent per annum, the interest payable annually with attorney's fees. The seller agrees to furnish a complete abstract of title to said buyer; the seller also agrees to pay all state, county and special taxes on said property, excepting taxes of every nature assessed after April 1st, 1893, and thereafter, which it is expressly understood and agreed that the buyer, his heirs or assigns shall pay all taxes and assessments of every nature assessed against said real estate after April 1st, 1893; that if not paid said deed shall be subject thereto. The seller agrees to deliver to buyer or order a general warranty deed, properly executed, and free and clear of all taxes and incumbrances down to April 1st, 1893, upon the payment by the buyer, his heirs or assigns of the two notes herein referred to; if the buyer fail to pay all of the notes herein described, or the interest upon the same when it becomes due, he shall forfeit to the seller all sums of money paid as fixed and liquidated damages, and not as a penalty; and upon such default the said buyer, his heirs or assigns, shall have no further right, title or interest in any way whatsoever in and to said described real estate."

Pursuant to this contract the improvement company on

July 6, 1896, executed to the appellee its warranty deed to the lots in question, the consideration expressed in said deed being $300. There was never any other written contract between appellee and said improvement company relating to said lots, except said deed and the contract pursuant to which said deed was made, and there was no written contract of any kind between appellee and the railroad company. There was no written contract of any kind between appellee and the railroad company relating to the establishment by said company of its division headquarters, terminal, etc., or erecting its offices, shops, roundhouse or buildings at said town of Ashley and no written contract of any kind with reference to said company either permanently or temporarily maintaining such division headquarters, terminal and buildings at said point. The railroad company about the month of July, 1907, removed from said town of Ashley the division terminal, structures, etc., mentioned in the complaint that were so installed by the railroad company at Ashley in 1892 or 1893, and were by such company maintained there until their removal to Montpelier, Ohio, about July, 1907.

It is earnestly contended by appellants that they were entitled to judgment on said answers to interrogatories. In support of this contention they urge in effect: (1) That such answers affirmatively find that the contracts relied on by appellee as being verbal and on which he bases his right to recover, were in writing, and that having predicated his right of action upon verbal contracts he cannot recover on written contracts. (2) That the written contracts found by the jury to have been entered into, contain no agreement on the part of either of the appellants that the railroad company should *permanently maintain* its division terminal, buildings, etc., at Ashley as alleged in appellee's complaint and hence could not in any event support a judgment in appellee's favor. (3) That, even if it be conceded that appellants had verbally agreed with appellee as alleged in his complaint, and that such agreements were valid and enforce-

able, that the findings of the jury show a substantial compliance therewith according to the reasonable intendment and meaning thereof.

There can be no doubt but that appellee is bound by the averments of his complaint and having alleged an oral contract, he will not be permitted to recover upon proof

4. showing that the contract relied on was in fact in writing. *Lake Shore, etc., R. Co.* v. *Bennett* (1883), 89 Ind. 457, 461; *Stewart* v. *Cleveland, etc., R. Co.* (1898), 21 Ind. App. 218, 226, 52 N. E. 89; *Hall* v. *Pennsylvania Co.* (1883), 90 Ind. 459, 464; *Louisville, etc., R. Co.* v. *Godman* (1885), 104 Ind. 490, 493, 4 N. E. 163; *Indianapolis, etc., R. Co.* v. *Forsythe* (1892), 4 Ind. App. 326, 29 N. E. 1138. It is also true that the written contracts offered in evidence, contain no agreement on the part of either of appellants, to the effect that the railroad company would *permanently maintain* its division headquarters, buildings, etc., at the town of Ashley, and hence furnish no support to the vital issue tendered by the complaint.

It is insisted, however, by appellee, in effect, that there is no finding by the jury that there was *no verbal* agreement of the character alleged in his complaint, and that we must therefore assume in favor of the general verdict that such oral agreement was proven. It is a general rule

5. that where a written contract appears to be complete, it is presumed to be the repository of the final intention and agreement of the parties in regard to the subject-matter of such agreement, and that such agreement cannot be changed, modified, added to or subtracted from by proof of any prior or contemporaneous parol agreement. *Carr* v. *Hayes* (1887), 110 Ind. 408, 414, 11 N. E. 25; *Diven* v. *Johnson* (1888), 117 Ind. 512, 515, 20 N. E. 428, 3 L. R. A. 308; *Singer Mfg. Co.* v. *Sults* (1897), 17 Ind. App. 639, 641, 47 N. E. 341; *Stevens* v. *Flannagan* (1892), 131 Ind. 122, 128, 30 N. E. 898; *Western Pav., etc., Co.* v. *Citizens St. R. Co.* (1891), 128 Ind. 525, 535, 537, 26 N. E. 188, 25

Am. St. 462; *Conant* v. *National State Bank* (1889), 121 Ind. 323, 22 N. E. 250; *Pickett* v. *Green* (1889), 120 Ind. 584, 588, 22 N. E. 737; *Stewart* v. *Babbs* (1889), 120 Ind. 568, 22 N. E. 770; *Gemmer* v. *Hunter* (1905), 35 Ind. App. 501, 504, 506, 74 N. E. 586. An exception to the rule just announced prevails with reference to the consideration recited in a deed, or writing of any kind, the general rule in such cases being that "the consideration expressed in an instrument of writing may be varied or contradicted to almost any conceivable extent." *Pickett* v. *Green, supra,* and cases there cited. However, this rule has its exceptions. In *Pickett* v. *Green, supra,* the Supreme Court in commenting on this rule and the reason for its existence on page 588 said: "The reason generally given for the rule is that the language with reference to the consideration is not contractual; it is merely by way of recital of a fact, viz., the amount of the consideration, and not an agreement to pay it, and hence such recitals may be contradicted. There is also a rule, so well known that it needs no citation of authority, to the effect that parol testimony cannot be received to vary, contradict, or add to the terms of a written contract; and out of this grows the exception to the rule first above stated, that where the contract is complete upon its face, a stipulation as to the consideration becomes contractual, and where there is either a direct and positive promise to pay the consideration named, or an assumption of an encumbrance on the part of a grantee in a deed which becomes binding upon its acceptance, then the ordinary rules with reference to contracts apply, and the consideration expressed can no more be varied by parol than any other portion of the written contract." See authorities cited. Appellants contend that the contract between appellee and the improvement company pursuant to which the appellee's deed was made, shows the consideration to be contractual in character and hence under the rule above announced, cannot be contra-

dicted or added to, by evidence of an oral agreement showing an additional or different consideration.

Assuming, without deciding, that appellants are in error in this contention and that under the averments of his complaint, appellee might have proven a verbal agreement 6. between himself and the appellants by which they agreed as part of the consideration for his buying the lot in question that the division terminal, buildings, etc., of the railroad company should be permanently located at the town of Ashley, the possibility of such proof, under the issues, would prevent a judgment on the answers to interrogatories, but when we come to consider the motion for a new trial and look to the evidence, we find that no such proof was made. When we look to the evidence we find that the facts found by the jury in its answers to interrogatories are undisputed and we also find that the written contracts above set out were the only contracts either written or verbal shown to have been entered into between appellants themselves or between either of them and appellee. There was some evidence tending to show that some of the officers of the two companies, and especially of the improvement company, had by certain letters, advertisements, statements, and public utterances, represented in effect that the location of said terminal station, buildings, etc., were intended to be permanent, but none of these statements could be said to be contractual in character. They were merely the statements and representations of such officers of what they claimed to be, the then present intention and understanding of such companies, which, if untrue, could at most furnish grounds upon which fraud might be predicated, but they were in no sense of the nature of an agreement or contract intended to obligate or bind such railroad company to so permanently locate such terminal station, buildings, etc., at said point. As to the validity and effect of a contract of the kind herein sued on, whether verbal or written, when

made for the purposes and under the circumstances averred in the complaint, we express no opinion. It is clear that the decision is not supported by sufficient evidence and hence the motion for new trial should have been sustained.

Many other reasons for a reversal of the judgment are presented and argued by appellant with persuasive force and reason, but it is apparent that the conclusion we have reached will necessitate a complete change and reformation of the pleadings, and such questions will not likely arise again. The judgment is reversed with instructions to the court below to grant a new trial, and to permit appellee to amend his complaint if he so desires, and for such further proceedings as may not be inconsistent with this opinion.

Note.—Reported in 102 N. E. 155. See, also, under (1) 20 Cyc. 95, 99; (2) 20 Cyc. 20; (3) 9 Cyc. 715; (4) 9 Cyc. 753; (5) 17 Cyc. 596, 648; (6) 33 Cyc. 115. As to knowledge by defendant of falsity of representation and his intent to deceive plaintiff as essential grounds of action for fraud, see 18 Am. St. 559. As to admissibility of parol evidence to vary writing in respect of the consideration, see 56 Am. St. 664. On the question of statements regarding future as a fraud, see 35 L. R. A. 420, 437.