## CITIZENS NATIONAL BANK *v.* KERNEY, ADMINIS-TRATOR.

[No. 8,406.  Filed January 12, 1915.  Rehearing denied April 14, 1915.  Transfer denied May 25, 1915.]

1.  APPEAL.—*Assignment of Errors.—Waiver.—Briefs.*—An assignment of error challenging the sufficiency of the complaint is waived, if not presented by appellant's brief.  p. 103.

2.  APPEAL.—*Review.—Issues.—Equitable Set-Off.—Subsequent Answer of Statutory Set-Off.*—Where defendant bank had applied the amount of a deposit made by plaintiff's decedent as a credit on decedent's unmatured note which the bank then held, and, in an action by plaintiff to recover the amount of the deposit, pleaded an equitable set-off, defendant's filing of a further paragraph of answer, after the note had matured, of statutory set-off based on such note, in effect took the former out of the case, or at least so shaped the issues that the disposition of any question affecting the equitable set-off was rendered unimportant to defendant.  p. 103.

3.  APPEAL. — *Questions Reviewable. — Decision of Trial Court. — Conclusiveness.*—Where the question involved was whether a note executed by appellee's decedent was void as having been executed as a secret preference to appellant in effecting a composition with decedent's creditors, and appellant contended that it was executed voluntarily after the composition with creditors had been consummated, the decision of the trial court in favor of appellee must be deemed conclusive unless it can be said that there was no probative evidence in its support.  p. 104.

4.  COMPOSITIONS WITH CREDITORS. — *Essentials. — Secret Preferences.*—Where creditors unite in a composition agreement with their common debtor, the utmost good faith must be observed by all the parties, and any secret promise by the debtor to a creditor to pay him more than the others is void.  p. 104.

5.  COMPOSITIONS WITH CREDITORS.—*Secret Preferences.—Evidence. —Sufficiency.*—Where the only question involved was whether a note executed by appellee's decedent to the appellant was void as having been executed as a secret preference in effecting a composition with decedent's creditors, appellant's contention that there was no evidence to warrant the trial court's finding that the note was executed as a secret preference can not be sustained, notwithstanding appellant has in its favor the presumption of good faith and the inhibition of the law against the presumption of fraud, where it conclusively appears from the facts disclosed by the note, the composition agreement, and

other papers connected with the transaction, that decedent borrowed a sum from appellant with which to effect the composition; that the note was given to appellant for a part of its claim not included in the composition settlement; that on the day of accepting the settlement under the composition, though subsequent to such acceptance, appellant took decedent's agreement to execute the note in question, etc., and especially in view of the testimony of decedent's sons to the effect that the president of defendant bank would not sign the composition agreement without an understanding that the note would be executed, and to the effect that the execution of a new note in its stead was later demanded of decedent because the note in question was not available.   pp. 105, 111.

6.   COMPOSITIONS WITH CREDITORS.— *Secret Agreements.— Admissibility of Parol Evidence.*—In an action involving the question of whether a note in question was executed by plaintiff's decedent as a secret preference in effecting a composition with creditors, parol testimony of negotiations had with defendant prior to the execution of the composition agreement showing that the execution of the note was requested by defendant as a condition for its acceptance of the composition settlement, as well as testimony of admissions subsequent to the execution of the note, to the effect that it was a preference, was admissible notwithstanding the written composition agreement had been executed some time prior to the execution of such note.   pp. 108, 110.

7.   CONTRACTS.—*Written Contracts.—Parol Evidence.—Admissibility.*—Parol evidence can not, as a general rule, be received to vary or contradict the terms of a written contract, or to show that the consideration, if contractual in character, is other than that expressed; but such rule has no application where the contract was procured by fraud or resulted from the mutual mistake of the parties, or where the contract was tainted with fraud in its inception and in the negotiations leading up to its making.   p. 109.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action commenced by William Kerney against the Citizens National Bank, in which Neal W. Kerney, as administrator of the estate of William Kerney, deceased, was later substituted as plaintiff. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Woodfin D. Robinson, William E. Stilwell* and *Oscar R. Luhring,* for appellant.

*Philip W. Frey, John D. Welman, George R. DeBruler* and *G. V. Menzies*, for appellee.

HOTTEL, C. J.—The questions involved in this appeal can probably be presented intelligently and with least repetition by first stating the facts which made possible this litigation. For some time prior to September 14, 1906, appellant had been engaged in the banking business in the city of Evansville, and appellee's decedent, William Kerney, then in life, and hereinafter referred to as decedent, had been one of its patrons and customers. On September 1, 1906, and continuously up to September 14, 1906, decedent was indebted to such bank in the sum of $9,930 for money borrowed therefrom and evidenced by his note or notes. Decedent was at such time indebted to numerous other persons, firms and corporations in various sums for goods and merchandise sold to him by them. On September 14, 1906, decedent was adjudged a bankrupt and the adjudication of such bankruptcy proceedings was referred to the referee in bankruptcy for the referee district in which Evansville in the county of Vanderburgh was and is situated. On October 4, 1906, appellant filed its said claim against such bankrupt for the sum of $9,930, which claim was on the same day allowed. On October 6, 1906, the bankrupt, pursuant to one of the provision of the act of Congress authorizing and controlling such bankruptcy proceedings, offered in writing to make a composition with all his creditors by paying them fifty cents on the dollar. This offer was accepted by a majority of the creditors, including appellant. This acceptance is dated, "Evansville, Indiana, Oct. 6, 1906," refers to the offer as having been made on October 6, 1906, and is signed by appellant and numerous other persons, firms and corporations. On October 22, 1906, appellant agreed to accept in lieu of the cash payment to which it would have been entitled by such composition, the note of decedent for its fifty per cent, which agreement is as follows:

"In the District Court of the United States for the District of Indiana.. In the Matter of William Kerney, Bankrupt. In Bankruptcy. No. 266. To the Honorable Albert B. Anderson, Judge of the District Court of the United States for the District of Indiana: At Evansville, in said District, on the 22d day of October, A. D., 1906, now comes the Citizens National Bank of Evansville, Indiana, and represents the following: That it is a creditor of William Kerney; that its claim has been filed and allowed in the sum of nine thousand nine hundred and thirty dollars ($9,930.00) ; that said bankrupt has offered a composition to his creditors at fifty per centum (50) on the dollar, and that said bank now here offers to accept and states that it will accept as and for and in lieu of its fifty per centum (50) in money of nine thousand five hundred and thirty-four and 15/100 dollars ($9,534.15) of its debt the promissory note of William Kerney for four thousand seven hundred sixty-seven and 08/100 ($4,767.08), which promissory note shall be as follows: The note of William Kerney, dated October 22, 1906, in the sum of four thousand seven hundred sixty-seven and 08/100 dollars ($4,767.08), due thirty (30) days after date, payable to the order of the Citizens National Bank of Evansville, Indiana, at The Citizens National Bank of Evansville, Indiana, waiving relief from valuation or appraisement laws, providing for attorney's fees and six per cent. (6) interest per annum from date. And that said note will be accepted by it in lieu of cash. (Signed) The Citizens National Bank of Evansville, Indiana. By W. L. Swormstedt, Cashier."

On this same day appellant took from appellee's decedent another agreement to pay the remaining fifty cents on the dollar of its claim, which agreement is as follows:

"William Kerney, of Evansville, Indiana, agrees with the Citizens National Bank of Evansville, Indiana, that for the amount of money owing to said Citizens National Bank by said William Kerney not paid by the composition in bankruptcy made in October and November, 1906, the said William Kerney will execute to said bank his note, due five (5) years from date without interest; that as collateral security therefor he will cause to be delivered four certain insurance policies, each in the sum of $2,500.00 on the life of William Kerney, which

said policies are now in the possession of said bank. But the stock of merchandise held by said bank is not to be held as security for this part of William Kerney's debt, but is to be turned over and conveyed to said Kerney when his two notes one for $4,767.08 and one for $2,500.00 are paid, or satisfactorily arranged. And said Kerney authorizes said bank to charge off as expense from the account of moneys realized from the sale of his stock of merchandise the premiums on said insurance policies as they fall due. And he further agrees to keep the premiums paid up so long as this debt is unpaid. In witness whereof, the said William Kerney has hereunto set his hand and seal this 22nd day of October 1906. Wm. Kerney.''

On the same day appellant also loaned to decedent $2,250 with which to carry out the composition.

The petition for the confirmation of the composition was also filed October 22, 1906, and in this petition is set out a copy of the note which appellant had agreed to accept in lieu of cash for its fifty per cent of its claim under such agreement of composition. The referee's certificate of the offer of composition was filed November 8, 1906, and the order confirming the composition was entered November 10, 1906. On November 19, 1906, decedent executed to appellant another and third note, a copy of which is as follows:

''$4,767.08                Evansville, Ind., Nov. 19, 1906.
Five years after date, we or either of us, promise to pay to the order of The Citizens National Bank of Evansville, Indiana, forty-seven hundred sixty-seven and eight hundredths dollars, and attorney's fees, with interest at eight per cent. per annum after maturity and until paid. Negotiable and payable at The Citizens National Bank, of Evansville, Indiana, without any relief whatever from valuation or appraisement laws, for value received. Wm. Kerney.''

This note represented the unpaid fifty per cent or balance of appellant's claim against such bankrupt not covered or paid by the composition thereof and was intended as and given in payment of such balance. After his discharge in bankruptcy, decedent paid to appellant the first two of

the three notes last above referred to, leaving unpaid the note due five years from date last above set out. Thereafter decedent continued to do business with appellant and from time to time made deposits in its bank. Appellant's bank is a national bank and on January 15, 1910, and for some days prior thereto was insolvent, and for some days prior to and subsequent to such date it was in charge of and under the control of the comptroller of currency, by and through one James C. Johnson, who was at such time a national bank examiner. During said time appellant owed to persons who had deposited money in its bank a large amount of money, to wit, an amount in excess of $1,000,000, and appellant had in its possession a large number of promissory notes and other evidences of indebtedness wholly unsecured. Many of the makers of such notes were insolvent and unable to pay or secure them. The amount of such unsecured and worthless notes then so held by appellant was in excess of its capital stock. Among such notes was the decedent's note of date of November 19, 1906, for $4,767.68, which was on January 15, 1910, still in appellant's possession and unpaid. Decedent after his composition with his creditors in said bankruptcy proceedings continued in business as a retail shoe merchant in Evansville and continued as the customer of appellant's bank and from time to time made deposits therein, and on January 15, 1910, had on deposit in such bank the sum of $2,659.25, which appellant on said day pursuant to an order of its board of directors, applied as a credit on decedent's last mentioned note. On February 9, 1910, decedent made a written demand on appellant for the amount of his deposit to wit, $2,659.25, which demand appellant refused. The foregoing are in substance the undisputed facts disclosed by the pleadings and the evidence.

On February 10, 1910, decedent filed in the Vanderburgh Circuit Court his complaint in two paragraphs seeking to recover the amount of his said deposit in appellant's bank.

The first paragraph is the ordinary common count for money had and received, and the second paragraph proceeds on the theory that decedent had deposited with appellant the sum of $2,659.25 under a written and printed contract, by the terms of which appellant was to repay such sum on demand. At the March term, 1910, of said court, appellant filed an affirmative, answer setting up in detail the facts hereinbefore indicated relating to the insolvency of such bank, its operation by the comptroller of the currency and decedent's insolvency and the application of decedent's deposit as payment on said note of date of November 19, 1906, and averments by way of justifying such application of the deposit, on the theory that it was made by appellant's board of directors under the order and direction of the comptroller of the currency in an effort to prevent such bank being placed in the hands of a receiver and its affairs closed as an insolvent, and to save the depositors of such bank such amount as a credit on an unsecured and worthless note. At the same term of court, to wit, on March 20, 1910, decedent filed to said answer a reply in two paragraphs, the first paragraph is a general denial and the second sets out in detail the facts hereinbefore indicated relative to decedent's bankruptcy proceedings and the filing and allowance of appellant's claim therein and the bankrupt's composition with his creditors, with averments showing and charging that the note on which appellant had applied decedent's said deposits as a credit was given as a secret preference to appellant in the matter of, and as part of, decedent's composition with his creditors and was for this reason fraudulent and void.

The cause was later venued to the Posey Circuit Court and on the day of trial to wit, April 23, 1912, the appellant filed a second and third paragraph of answer. The second paragraph was by way of set-off, based on appellant's note on which it had applied decedent's deposit as a credit, such note having in the meantime become due.

On this same day the death of William Kerney (decedent) was suggested and appellee administrator was substituted and he then filed a third paragraph of reply addressed to appellant's third paragraph of answer, such reply setting out substantially the same facts set out in decedent's second paragraph of reply before indicated herein. On the issues thus formed, there was a trial by the court and a general finding for appellee. Appellant filed its motion for new trial which was overruled and judgment was then 1. rendered on the finding. From this judgment, appellant appeals and assigns as error in this court the insufficiency of the complaint, and the ruling on the motion for new trial. The first assigned error is waived because not presented by appellant's brief. *Theobald* v. *Clapp* (1909), 43 Ind. App. 191, 87 N. E. 100.

While the motion for new trial contains several grounds which are here relied on and urged as grounds for reversal, appellant concedes that the principal question to be determined by the appeal is "the validity of the note executed by Kerney on November 19, 1906." In this connection it says: "If the note is a valid note the appellant insists that the bank had the right to apply the credit at the time it applied it, *at any rate (it) was entitled to a set-off at the time of trial as the note was then due, and that judgment over for the balance due on the note should have been rendered in the bank's favor.*" (Our italics.)

It is apparent that both of these contentions are predicated on the validity of said note. It will be observed from the history of the case set out above, that, after 2. appellant filed its first paragraph of answer, setting up an equitable set-off, the note, on which it had applied decedent's deposit (as alleged in such answer of equitable set-off), matured, and it then filed an answer of statutory set-off based on such note, and asking judgment for any excess due on such note over decedent's claim. It follows that the latter answer, in effect, took the former

out of the case, or at least, so shaped the issues that the disposition of any question affecting such equitable set-off is rendered unimportant to appellant.

This, in effect, eliminates all questions save that of the validity of said note which question, as it comes to us, is one of fact to be determined from the evidence in 3. the case. It is contended by appellee that such note was given as a secret preference over decedent's other creditors in the bankruptcy proceedings to induce appellant to sign decedent's composition with his creditors, and hence is invalid. Appellant on the other hand contends that decedent, after the composition with his creditors had already been made, executed such note voluntarily, and as a recognition of the moral obligation to pay the balance of his indebtedness to appellant. Appellee has in his favor the decision of the trial court, and unless this court can say that such decision on the question involved is without any probative evidence in its support appellant must fail: *Hedrick* v. *Hedrick* (1911), 48 Ind. App. 658, 660, 94 N. E. 728; *East* v. *Amburn* (1911), 47 Ind. App. 530, 535, 94 N. E. 895; *Lucas* v. *Rhodes* (1911), 48 Ind. App. 211, 220, 94 N. E. 914. It is well settled in this State, and indeed, 4. in all other jurisdictions covered by our investigation of the question under consideration, that, where creditors unite in a composition agreement with their common debtor, that "the utmost good faith must be observed by all parties", and that "a secret promise by the debtor to one creditor to pay him more than the others is void." *Carey* v. *Hess* (1887), 112 Ind. 398, 400, 14 N. E. 235; *Morrison* v. *Schlesinger* (1894), 10 Ind. App. 665, 667, 38 N. E. 493; *Huntington* v. *Clark* (1873), 39 Conn. 540, 553; *Atlas Engine Works* v. *First Nat. Bank* (1912), 50 Ind. App. 549, 553, 97 N. E. 952; *Powers Dry Goods Co.* v. *Harlin* (1897), 68 Minn. 193, 71 N. W. 16, 64 Am. St. 460; *Hanover Nat. Bank* v. *Blake* (1894), 142 N. Y. 404, 410, 37 N. E. 519, 40 Am. St. 607, 27 L. R. A. 33; 1 Story, Eq.

Jurisp. (13th ed.) 384, 385; Greenhood, Public Policy 141, 142.

The question here involved therefore requires us to determine whether there is any evidence in this case which can be said to authorize the inference (evidently drawn by the trial court), that the note in controversy was given pursuant to a secret agreement of preference or advantage made between decedent and appellant by way of inducement to appellant's signing said composition agreement. As affecting this question, we have indicated above, in detail, the undisputed entries and documentary evidence connected with appellee's composition with his creditors and it is very earnestly insisted by appellant that from this evidence alone, the question being considered, must be determined, and that such evidence affirmatively shows that the note in suit was given by appellant after such composition, and that, if it can be said to be given pursuant to any agreement, such agreement was in writing, made after appellant's acceptance of the composition, and that the writing affirmatively shows the note was not given as such secret preference to appellant, and could not have been the inducement to sign a composition entered into and signed before the giving of either the note or such agreement.

We can not agree with either of these contentions. We recognize that appellant has in its favor the presumption of the *bona fides* of the transaction, and the inhibition of the law against a presumption of fraud, but we are nevertheless of the opinion that the record and documentary evidence before indicated is of such a character that if, as appellant contends, the decision of the trial court must rest on it alone, this court could not disturb such decision. This evidence shows that appellee's decedent was adjudicated a bankrupt September 14, 1906. Appellant's claim of $9,930 was filed October 4, 1906. Decedent's offer to make composition with his creditors was filed October 6, 1906. The acceptance of the offer bears the same date of the offer and

refers to the offer as having been made October 6, 1906, and is then signed first by appellant, and then by numerous other creditors from different towns and cities in different states. On October 22, 1906, appellant filed its written offer to accept a note for its part of its claim under the composition agreement, in lieu of cash and on the same day it loaned to decedent $2,250 additional with which to carry out his composition agreement with the other creditors. On the same day appellant also obtained from decedent the agreement to execute to it the note in controversy; and the decedent filed his petition for the confirmation of the composition with his creditors. The confirmation was finally made by the court on November 10, 1906. The agreement providing for the giving of the note in suit refers to the composition in bankruptcy as "made in October and November, 1906".

It appears conclusively from the foregoing facts that decedent was required to borrow, and that appellant furnished, the money with which decedent effected the composition with his creditors; that appellant did in fact get the note in suit for the part of its claim not included in the composition settlement; that on the same day on which appellant took from decedent his note in lieu of cash as a settlement of its claim under such composition and let decedent have the money necessary to pay his other creditors appellant also took from decedent an agreement by which decedent agreed to give appellant a note for the remainder of its claim. It is but reasonable to suppose that decedent had made some arrangement to get this money to effect such composition with his creditors prior to submitting his proposition of composition. It is significant that appellant's offer to take the note for its part of the composition of its claim in lieu of cash and to furnish to decedent the balance necessary to effect such composition, and the taking of the agreement providing for the execution of the note in suit, and decedent's petition for a confirmation of the

composition, should all occur on the same day. Was it a mere coincidence, that all these things were done on the same day, or were they interdependent acts on which the decedent's consummation of the composition with his creditors depended because of an arrangement which he had with appellant before he made his offer of composition?

The fact that these transactions all occurred on the same day leaves a slender thread to support appellant's contention that because the note and the written agreement pursuant to which it was executed were both executed after appellant's acceptance of the proposition of the composition neither could have been executed as a secret inducement to such acceptance. Said acts were all a part of the same transaction; and if appellant, when it filed its written offer to accept, for the composition of its claim, a note, in lieu of cash, had also filed the agreement made the same day by which it agreed with decedent to give him the note in suit for the remainder of his claim we apprehend that it would not be seriously contended by appellant that such composition would have been consummated. If such agreement had been disclosed it is not likely that either the creditors or the bankruptcy court would have permitted a confirmance of such composition. However, in addition to said undisputed record and documentary evidence, we have also the evidence of decedent's two sons, which is in part as follows: Eugene Kerney testified, in effect, that he was present at a conversation between his father and Capt. Gillett, president of appellant bank, at a time when decedent's offer of composition was pending, and just a few days before it was signed, in which his father said to Capt. Gillett in substance that he "had about got the composition" with his creditors arranged and wanted him (Capt. Gillett) to sign the composition to accept a fifty cent settlement. Gillett replied "we absolutely will not sign a composition unless I get a note or something, because we must be paid one hundred cents for this debt. * * * Capt. Gillett pro-

posed a note for five years without interest * * * My
father said he would study it over. * * * We finally
agreed * * * when we came back if he would make this
note for five years without interest, and if he would sign
the composition then we would give him the note because
he said he absolutely wouldn't sign the composition unless
we did give him a note, we afterwards agreed, we gave him
the note and he signed the composition.''

Decedent's other son, Neal Kerney, testified to a con-
versation between decedent and Capt. Gillett in the latter
part of February, 1909, as follows: ''Well, Capt. Gillett,
my father and my brother were talking as I was helping
pack up the goods, I heard part of the conversation, and
my father said to Capt. Gillett, Captain, you know that
note is illegal according to law and can't be collected, and
Capt. Gillett said, I know that but I want you to come
down to the bank and give me another note because I can't
use that note in that shape. My father said, I know you
can't use the note and we were both advised the note was
illegal.'' In reply to ''father's'' last remark Capt. Gilllett
said ''he knew that they were advised''.

As affecting the competency of this evidence and its effect
on the question being considered, appellant in its brief says:
''The written agreement of Mr. Kerney to give the
note in controversy was made October 22, 1906. It
had a valid consideration. The composition with
creditors had then already been made. It can not now be
shown that the consideration for this written agreement
was some prior oral agreement. Parol testimony can not
be received to vary, contradict, or add to the terms of a
written contract, and this rule applies to the consideration
expressed in the written contract. * * * The written
contract executed October 22, 1906, was a complete contract
upon its face and as such the consideration became con-
tractual and can no more be varied by parol than any other
portion of the writing * * *. If the written agreement

of October 22, 1906, was a valid agreement and the note was given in pursuance of that agreement, the note was a valid note. If the written agreement of October 22, 1906, was an invalid agreement, Mr. Kerney was not bound to carry it out, and the execution of the note was a voluntary act on his part and was a binding promise to pay the debt. * * * The testimony of the witness Eugene Kerney to vary and contradict the terms of the written agreements between Mr. Kerney and the bank was improperly admitted."

It is questionable whether appellant has properly saved the question it now attempts to present relating to the admissibility of this evidence, but assuming that it 7. has, without so deciding, we consider the questions above suggested. As a *general rule* parol testimony can not be received to vary or contradict the terms of a written contract and this rule is equally applicable to the consideration expressed in the contract where such consideration is contractual in character. *Wabash R. Co.* v. *Grate* (1913), 53 Ind. App. 583, 102 N. E. 155, and cases cited; *Pickett* v. *Green* (1889), 120 Ind. 584, 22 N. E. 737; *Stewart* v. *Chicago, etc., R. Co.* (1895), 141 Ind. 55, 40 N. E. 67; *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 505, 60 N. E. 943, 54 L. R. A. 787; *Diven* v. *Johnson* (1889), 117 Ind. 512, 20 N. E. 428, 3 L. R. A. 308; 1 Greenleaf, Evidence §275; 1 Beach, Contracts §32. There are, however, two well-recognized classes of cases to which this general rule has no application, viz., where the contract sought to be varied or contradicted was procured by fraud, or was the result of the mutual mistake of the parties. It is well settled that such rule has no application where the contract sought to be varied or contradicted was tainted with fraud in its inception and in the negotiations leading up to its making. *Moore* v. *Harmon* (1895), 142 Ind. 555, 559, 41 N. E. 599; *Tyler* v. *Anderson* (1886), 106 Ind. 185, 191, 6 N. E. 600; *Ewing* v. *Wilson* (1892), 132 Ind. 223,

226, 31 N. E. 64, 19 L. R. A. 767; *Fenwick* v. *Ratliff* (1827), 6 T. B. Mon. (Ky.) 154; 2 Jones, Evidence §441. This is necessarily so because a contract begotten in fraud can have no legal existence; but so to say would be mockery, if by its form and words such contract may be made to cover up the illegality or fraud with which it is tainted beyond the possibility of dispute or contradiction by other evidence. As affecting this question, and as peculiarly applicable to the present case, we quote from 2 Jones, Evidence §441: "Since it may always be shown that the document in question never had legal existence, it follows that it may also be shown to be tainted with illegality. For example, no formalities in the writing can stand in the way of proof that the contract is usurious or champertous; or that a lease was for an unlawful purpose; or that the contract was in furtherance of adulterous intercourse, or for compounding a felony, or for suppressing evidence on a criminal prosecution, or for the sale of an office, or for money won at play or for any other contract forbidden by statute or common law. In all such cases the court will go behind the apparently valid written instrument, and deal with the transaction on its merits; and it is immaterial whether the illegality of the instrument is created by the statute, or whether it is immoral, or in some way contravenes the general policy of the law. Under such circumstances the parol agreement cannot be said to be merged in the pretended written agreement, for it is only by virtue of its superior obligation that a written contract has the effect of extinguishing the verbal contract upon which it is founded; and of course when it has no obligation, it can have no such effect."

The foregoing authorities it seems to us dispose of appellant's contention that said evidence was improperly admitted. And, so long as the contract sought to be enforced is tainted with the original fraud no

number of intervening contracts can save it from the con-
demnation which the law places on it. 9 Cyc. 562, 563,
and cases cited; *Shelton* v. *Marshall* (1856), 16 Tex. 344;
*Zoebisch* v. *Von Minden* (1888), 47 Hun (N. Y.) 213;
*Hanover Nat. Bank* v. *Blake, supra; Hall* v. *Gavitt* (1862),
18 Ind. 390; 6 Am. and Eng. Ency. Law (2d ed.) 395;
15 Am. and Eng. Ency. Law (2d ed.) 996; *Negley* v. *Linsay*
(1870), 67 Pa. St. 217, 227, 228.

We do not mean to be understood as saying that a debtor,
who, in a composition with his creditors, gives to one of
them a secret preference by which he agrees to pay
5. to such creditor his claim in full, could not after-
wards give to such creditor an obligation by which
he would be bound to pay the balance of such claim. If
both the debtor and creditor recognizing the invalidity of
such secret preference cancel or ignore it, and the debtor
afterwards voluntarily and purely as a moral obligation,
and not pursuant to the illegal agreement, gives a new
promise it doubtless should and would be upheld by the
courts.

The facts in this case, however, do not necessarily bring
it within the case indicated. So that, even though appel-
lant's contention that the record and documentary evidence
in the case, standing alone, would necessitate a reversal of
the decision of the trial court (a contention with which we
can not agree), when we add to such evidence that of
decedent's two sons appellant can not seriously contend that
there is no evidence to support the decision of the trial court.
The judgment is therefore affirmed.

NOTE.—Reported in 108 N. E. 139. As to parol evidence to add
to or vary a writing, see 56 Am. St. 659; 17 L. R. A. 270. As to the
effect of giving one creditor a secret advantage, see 27 L. R. A. 33.
As to the admissibility of parol evidence to show illegality of
contract, see 16 Ann. Cas. 388. As to the validity of a note or other
security given as secret preference in composition with creditors,
see 16 Ann. Cas. 1072. As to the construction of a composition

agreement with creditors and the effect of fraud thereon, see Ann. Cas. 1914 A 836. See, also, under (1) 3 C. J. 1410; 2 Cyc. 1014; (2) 31 Cyc. 465; (3) 3 Cyc. 360; (4) 8 Cyc. 468; (7) 17 Cyc. 695, 702, 596, 650.