No. 13,370.

## DIVEN ET AL. *v.* JOHNSON.

CONTRACT.— *Written Lease.— Contemporaneous Parol Agreement.— Evidence.— Damages.— Counter-Claim.*—In an action by a lessor, alleging breaches by the defendant of a written contract of lease, which appears on its face to be complete, and not dependent upon, or collateral to, any other contract, the defendant will not be permitted to prove, by way of counter-claim or recoupment, a contemporaneous parol agreement by the lessor to ditch the land embraced in the lease, and damages resulting to him from a breach thereof, as a written contract can not be thus varied or contradicted.

From the Madison Circuit Court.

*H. D. Thompson* and *W. S. Diven*, for appellants.
*C. L. Henry* and *H. C. Ryan*, for appellee.

OLDS, J.—On the 9th day of August, 1883, the appellants, Charles E. and William S. Diven, and the appellee, William H. Johnson, entered into a written contract by which Diven and Diven leased to Johnson certain real estate situate in Madison county, and described in the contract, for the term of one year from March 1st, 1884, on the conditions stated in the contract, which are substantially as follows: Johnson to farm, in good farmer-like manner, all of the farm, and to put in such crops and kinds of grain as Diven and Diven may direct; to keep fence-corners and along ditches mowed clear of weeds and bushes; to haul out all manure made on the farm as may be directed; to keep fences in good repair, and to deliver to Diven and Diven one-half of all products raised on the farm, in the bushel or mow, at a point not further distant than Pendleton; Johnson to put wheat in such ground as may be directed, in autumn of 1883, on same terms as above stated; Johnson to clear underbrush out of the orchard, trim trees and cultivate the ground, on same terms as stated; to have all apples not otherwise cared for made into cider,

and the pomace cared for, so that the most vinegar can be gotten therefrom, Johnson to have for his share one-half of all other fruits.

It is further agreed that each party to the contract shall furnish an equal amount of stock sufficient for the farm, and no stock shall be kept on the farm but partnership stock, except work-horses and milk-cows for use of the family, and such stock as Diven and Diven shall keep on their reserved pasture, the stock to be cared for by Johnson from the products of the farm as may be most advantageous to their common interests, the proceeds from the stock to be divided equally; Johnson to have his firewood as directed by Diven and Diven, and not to cut any timber except as directed; Johnson to put up all clover and timothy, and to deliver to Diven and Diven one-half in mow as directed; the stalk pasture to be pastured in common or divided equally, as may be agreed upon, and Johnson to gather all corn and have all pastures ready for use in good season, not later than January 1st; stalks to be pastured only when ground is frozen, and not later than March 1st, and should wheat be sown on corn-ground, to be pastured only when snow is on the ground, and not later than February 1st; Johnson to have the house on the farm for his residence, and the barn on north side of the turnpike, the said Diven and Diven reserving the barn on south side of the turnpike for their own use; Diven and Diven to have the privilege at any time of entering any building or any part of the farm to make any improvements they may see fit on any of the buildings or grounds, and have the right to cut any wood or timber they may desire and remove it at any time; Johnson to take good care of buildings and keep them in as good repair as they are or may be put, and turn them over without further notice March 1st, 1885; Diven and Diven to have the right to enter on land and put in wheat, or have it done, on such ground as they desire, in autumn of 1884; Johnson to take no straw off the farm,

and to cut sufficient fodder to feed all stock kept in common, and to mow fence-corners and along ditches in July or August. It is further agreed that all crops and products shall remain the property of Diven and Diven until all conditions of the contract are fully performed.

The appellants, Diven and Diven, brought this suit against appellee, Johnson, alleging several causes of action. The complaint is in four paragraphs. The theory we take of this case is that it is only necessary to consider the fourth paragraph of the complaint and the answer thereto. The fourth paragraph of the complaint declares upon the written contract, the terms of which we have stated, alleging a failure on the part of the appellee to farm the land in a good, husband-manlike manner, and to mow the weeds and brush along the fences and ditches on the farm, and that damage has resulted to the appellants in the sum of one thousand dollars.

The defendant filed an answer in five paragraphs. The fifth paragraph of answer is addressed to the fourth paragraph of complaint, and is as follows: "And for a fifth and further answer herein to the fourth paragraph of plaintiffs' complaint, defendant, by way of counter-claim, or recoupment, says that at the date of the execution of the written contract sued upon in said paragraph, and as a part of the consideration for said contract, and in addition to the consideration stated therein, the plaintiffs entered into a parol agreement with this defendant wherein and whereby they, the plaintiffs, stipulated and agreed with this defendant that they would ditch said real estate and land set out and described in said lease, in a good and sufficient manner, before the time for the planting of corn for the year 1884, and the time covered by said lease; that if said ditching had been done on said land as agreed upon, said land would have been dry and rendered much more susceptible of cultivation, and would have produced much larger and better crops than it would in the condition it was in at the time and date of said lease and contract, but that said plaintiffs, wholly ignoring the said

covenants, promises and agreements, and wholly failing and refusing to so ditch said land as they agreed to, this defendant was unable to raise such crops on such land as he could have done had plaintiffs carried out their said agreement and caused said land to be ditched, by reason of which facts and the promises aforesaid this defendant was damaged in the sum of five hundred dollars, and he offers to recoup, or set off, against any amount that may be found due plaintiffs an amount equal thereto, and demands judgment for five hundred dollars, the residue."

The plaintiffs filed a demurrer to this paragraph of answer, for the cause that " said paragraph does not state facts sufficient to constitute a defence to plaintiffs' complaint," which demurrer was overruled and exceptions reserved by the plaintiffs. Trial and verdict and judgment for defendant. The ruling of the court on the demurrer is assigned as error, and is the first question to be considered.

It is a well settled principle that none will controvert, that a written contract can not be contradicted or altered by parol evidence. But it is sought in this case to avoid this well settled doctrine by alleging that the parol agreement sought to be proven in this case was an independent contract, which constituted the basis of, and consideration for, the written contract, and that it does not vary or change the written contract.

Greenleaf, in his work on evidence, vol. 1, section 275, says: " When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to

the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.'"

This doctrine is substantially laid down and adhered to by the decisions of our own court. In the case of *Singer M'f'g Co.* v. *Forsyth,* 108 Ind. 334, the court quotes from *Rutland's Case,* 5 Coke's R. 26: "It would be inconvenient," says Lord Coke, "that matters in writing made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by averment of the parties to be proved by the uncertain testimony of slippery memory. And it would be dangerous to purchasers and farmers, and all others in such cases, if such nude averments against matter in writing should be admitted." And the court adds: "Obligations which parties have deliberately entered into, and put in writing, can not therefore be pared down, taken away or enlarged by parol evidence." In the same case the court also says: "The rule that a formal written contract, which appears to be complete, will be presumed to be the repository of the final intentions of the parties, in regard to the subject-matter of the agreement, and that it excludes proof of any prior or contemporaneous parol stipulations which would contradict the writing, is abundantly settled, and should not, on account of its importance, be relaxed in any degree."

The case of *Carr* v. *Hays,* 110 Ind. 408, was where Hays executed a warranty deed to Pettit, and Pettit executed back to Hays a contract agreeing to assume and pay twenty-one thousand and eighty-one dollars to certain parties, and that if Hays should pay back to Pettit the said amount, with ten per cent. interest thereon, within three years, then he would convey to said Hays a certain tract of real estate. It was sought in that action to aver and prove, as a further consideration for the deed from Hays and wife, and as a fur-

ther inducement to Hays to execute said deed and accept such written contract, that Pettit had verbally agreed with Hays that he should continue to occupy and have the use of the lands so conveyed for the term of three years; that Pettit would furnish him five hundred yearling steers to be kept by him on the said lands so conveyed and other lands, and Hays should mortgage the steers to repay Pettit for the money so paid for them; and that when said steers matured and were sold, Hays should have the excess over and above the repayment of the purchase-money for the steers, and interest, as a compensation for his care and management of the lands.

The court in that case says: "Under the averments of these paragraphs of complaint, the warranty deed of appellee to Pettit, and the written contract given by Pettit to appellee, were both executed on the same day; each was the consideration for the execution of the other; they both constituted parts of one and the same transaction, and together they formed one and the same contract. In this contract, all oral negotiations and verbal agreements, precedent or concurrent, by or between the parties in relation to the subject-matter of such contract, were completely merged; and the two parts of such contract, appellee's deed and the writing executed by Pettit in consideration of such deed, became and were the exclusive evidence of the only covenants and agreements, of or concerning the subject-matter of such contract, by which the respective parties ultimately bound themselves." The court in that case further says: "In each of these paragraphs, it was alleged, as we have seen, that Pettit's verbal contract was made as a further consideration for, and as an inducement to, the execution of appellee's deed. These averments being true, it can not be correctly said that such verbal contract was, in any legal sense, collateral to appellee's deed or Pettit's written contract of assumption, which together constituted their written contract. It is well settled by our decisions, that such a contract can not be con-

trolled, diminished or enlarged by any precedent or contemporaneous verbal agreement by or between the parties, in relation to the subject-matter of the written contract."

The principle enunciated by the authorities from which we have quoted is decisive of this case. The contract in this case appears to be complete within itself. No suggestion arises out of it that it is dependent upon, or collateral to, any other contract or agreement, either oral or written. It is, on the one hand, a lease by appellants to the appellee of the real estate described in the lease, and as a consideration for such lease and use of the land the appellee agrees to do and perform certain things, and to deliver to appellants a stipulated share of the crops. On the other hand, as a consideration for the things appellee is to perform, and the share of crops he agrees to deliver to appellants, appellants are to give to him the use of the land in the state of cultivation in which it then was. To hold that the lessee, in a contract like the one in this case, can allege and prove a contemporaneous parol contract, affecting and changing the terms, consideration and liability on the written contract, would permit the lessor, on the other hand, to allege and prove a contemporaneous verbal contract, by which, as an additional consideration for the lease, the lessee was to purchase and keep a certain number of cattle or other stock for a certain period of time, and upon the sale of the same to pay to him the net proceeds thereof. Indeed, it would destroy the whole force, effect and purpose of the written contract. There would be no purpose or benefit in stating in the written contract what either party was to do in consideration for the use of the land on the one hand, or for the farming and cultivating on the other, as all that would be necessary to avoid the effect of such a written contract would be to aver, as an additional consideration for the use of the land, or for the farming of the land, that it was verbally agreed at the time that certain other things were to be done, performed or paid. In this case the verbal contract alleged is in relation to the very subject-matter of the con-

tract. It is one of the matters that, if talked over at the time as alleged, and agreed upon by the parties, they would naturally have inserted in the contract. It relates to the lease of the real estate, as does the hauling out of the manure, cutting weeds and brush along ditches and fences, and firewood for the use of appellee, which are inserted in the contract. The contract sued upon appears to be complete in itself. There is nothing to indicate that it is collateral to, or dependent upon, any other contract, either oral or written, and, in the absence of fraud or mistake, it must be conclusively presumed that it contains the whole agreement of the parties and the manner and extent of their undertakings, and it can not be affected, altered or changed by any precedent or contemporaneous parol agreement. In addition to the authorities heretofore referred to, see Starkie Evidence, (10th ed.) top pp. 648, 665; *Welshbillig* v. *Dienhart*, 65 Ind. 94; *Wilson* v. *Deen*, 74 N. Y. 531.

We are aware that some of our decisions, in considering particular cases, have gone a good ways in the admission of parol evidence—on the theory that it is admissible in such cases to show the consideration of the contract in question—and possibly, carried to their legitimate extent, they would support the theory of counsel for the appellee and the ruling of the court below in this case; but we are rather inclined to limit than extend the doctrine as laid down and applied in the case of *Welz* v. *Rhodius*, 87 Ind. 1, and to adhere to the older as well as the more recent cases which we have referred to in support of this opinion.

The court below erred in overruling the demurrer to the fifth paragraph of answer, and for such error the case must be reversed.

The remaining errors assigned grew out of the ruling on this fifth paragraph of answer, in admitting evidence and charging the jury on the same theory that the answer was held good, and therefore it is unnecessary to prolong this opinion by stating and deciding them, as the theory we have taken of

the law in passing upon the paragraph of answer fully disposes of the other questions, and they will not arise upon another trial of the case.

Judgment reversed, with instructions to the court below to sustain the demurrer to the fifth paragraph of answer, and for further proceedings in accordance with this opinion.

