# SMITH ET AL. *v.* HUNT.

[No. 7,652.   Filed June 5, 1912.]

1. APPEAL.—*Assignment of Errors.—Waiver.*—An assignment of error is waived by failing to argue it or to cite authorities in its support.   p. 594.
2. TRIAL.—*Verdict.—Sufficiency of the Evidence.*—If a complaint counts on the breach of a parol warranty, a verdict for plaintiff is not sustained by evidence showing the contract to have been in writing.   p. 594.
3. CONTRACTS.—*Written.—Parol Evidence.—Admissibility.*—Where a contract is reduced to writing, it is the repository of the entire agreement between the parties, and cannot be added to nor varied by parol evidence.   p. 596.
4. CONTRACTS.—*Definition.—Termination.*—A contract is an agreement between two or more persons, based on a sufficient consideration, to do or to refrain from doing some particular thing, and its obligations remain in force on the parties thereto until terminated by performance or in some other manner recognized by law. p. 596.
5. SALES.—*Contract.—Performance.—Subsequent Reduction of Contract to Writing.—Breach of Warranty.—Admissibility of Parol Evidence.*—Where a parol contract of sale or exchange has been fully performed on both sides, a bill of sale thereafter executed containing a recital of the terms of the pre-existing contract as the parties at the time understood and remembered them, although some evidence of the terms of such contract, was not the

sole evidence thereof, so that in an action for breach of warranty parol evidence of the terms of the contract was admissible. p. 597.

6.   FRAUDS, STATUTE OF.—*Contracts.—Memorandum.—Evidence.*—Written evidence is the only character of evidence admissible to establish a contract governed by the statute of frauds, and a written memorandum introduced .in evidence is sufficient to establish the terms of such a contract regardless of whether it was made before or after the contract was performed.   p. 599.

7.   APPEAL.—*Review.—Harmless Error.—Instructions.*—The giving of an instruction which is not accurately worded is not cause for reversal where, in view of the evidence and other instructions given, the jury was not misled thereby.   p. 599.

8.   SALES.—*Breach of Warranty.—Counterclaim.—Fraud.—Instructions.*—In an action for breach of warranty of a horse sold to plaintiff in exchange for a stock of merchandise, where defendant filed a counterclaim based on alleged fraudulent representations of plaintiff relative to such stock of merchandise, an instruction which told the jury that if it found that the merchandise was traded on the basis of an inventory thereof delivered by plaintiff to defendant and on a basis of the prices therein contained and that plaintiff had told defendant's agent the kind and character of invoice and prices contained therein before the trade was consummated, its verdict should be for the plaintiff, was erroneous in that it was misleading and disregarded the alleged fraudulent representations in reference to the quality and fitness of such merchandise.   p. 599.

9.   SALES.—*Exchange of Property.—Fraudulent Representations.—Measure of Damages.—Pleading.—Proof.*—Where property is sold by fraudulent representations, the measure of damages recoverable is the difference between the value of the. .goods as they actually were and their value had they been as represenŧed, and in such action the value of the consideration exchanged for the property is immaterial and need not be pleaded or proved.   p. 601.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Walter D. Hunt against Marshall Smith and another.   From a judgment for plaintiff, the defendants appeal.   *Reversed.*

*Charles A. Cole, Albert H. Cole, Hillis & Bradfield,* and *Charles P. Baldwin,* for appellants.

*David E. Rhodes* and *John F. Lawrence,* for appellee.

LAIRY, J.—Appellee brought this action in the court be-

low to recover damages from appellants for the breach of a parol warranty alleged to have been made by them in the sale or trade of a stallion. From the averments of the complaint it appears that appellee was the owner of a stock of goods of the value of $2,500; that some time in January, 1909, he entered into a contract with appellants, whereby he agreed to deliver to them said stock of merchandise in exchange for a certain stallion, named Charlie, valued in the trade at $1,200, an automobile, and $500 in cash, and said trade was fully consummated by the delivery of the stock of goods to appellants and by the acceptance of the personal property and cash in exchange therefor by appellee. The complaint then charges that appellants at the time of the trade, and as a part of the consideration therefor, warranted that the horse Charlie was suitable and fit for breeding purposes; it also alleges a breach of this warranty and seeks to recover damages therefor.

The action of the court in overruling the demurrer to the complaint is assigned as error, but this assignment is

1. waived by a failure to argue it or to cite authorities in its support.

There was a trial by jury and a verdict and judgment in favor of appellee. Appellants' motion for a new trial was overruled, and this is assigned as error.

It is conceded by all parties to this appeal that the complaint counts on the breach of a parol warranty of the stallion. Appellants claim that the evidence in this

2. case shows without dispute that the contract for the sale of the stallion was in writing, and that it contains no warranty as to his breeding qualities. If this position of appellants is correct, the verdict is not sustained by the evidence and the judgment cannot stand. It is claimed, however, on behalf of appellee, that the contract under which the exchange of the property was made, rested wholly in parol and may be proved by parol testimony. This presents the first question for decision.

On the question under consideration, appellee testified as follows: "There was no written contract entered into for the sale of the horse. I prepared a bill of sale, sent it to Mr. Smith and asked him to sign it and return it to me. I got it at least ten days after the sale was made; after I came into possession of the horse and Mr. Smith came into possession of his stock of goods. I took the paper to Amboy with me several days after the trade had been consummated and asked Smith to have it signed and attested by a notary and he told me there was no notary in town and I told him if he could not have it attested by a notary to sign it in the presence of witnesses and return it to me. In a few days I received the document. The bill of sale bears the date of the sale. I had him to sign it to get something to show that I had a clear title to the horse, which I did not have at the time, although I had possession of the horse. The trade was closed on the 14th day of January. The bill of sale was not handed to Smith until after the horse was delivered to me."

The witness then identified the following bill of sale as given for the horse in controversy in this action, and appellants introduced it in evidence:

"Bill of Sale. I, the undersigned, Marshall Smith, of Amboy, Indiana, owner of the Percheron Stallion 'Charlie', 9402, for the sum of twelve hundred (1200) dollars worth of mdse. for the receipt of which is hereby acknowledged, have bargained and traded and by these presents do bargain, trade, transfer and convey the said Percheron Stallion, 'Charlie', 9402, to Walter D. Hunt of Gas City, Indiana, and I do for myself and my heirs and assigns warrant and defend the title to said Stallion to be free and clear from any and all incumbrances of every description what-so-ever, and I also warrant the said grey Stallion traded to the said Walter D. Hunt to be the same Stallion as the Stallion described as Charlie, 9402, in a certificate of pedigree issued by the American Percheron Registry Association, dated at LaGrange, Cook County, Illinois, the 27th day of September, 1906. Dated this 14th day of January, 1909. Marshall Smith."

After the bill of sale was introduced in evidence, appellants objected to the introduction of any testimony tending to show a parol warranty of the horse, on the ground that the contract for the sale of the horse was in writing, and contained certain specified warranties, and that parol evidence was inadmissible to vary the terms of this written contract. It is well settled that where a contract is 3. reduced to writing by the parties, all prior and contemporaneous parol negotiations are merged in this written contract. The writing is the repository of the entire agreement between the parties, and cannot be added to nor varied by parol evidence. *Reynolds* v. *Louisville, etc., R. Co.* (1896), 143 Ind. 579, 40 N. E. 410; *Shirk* v. *Mitchell* (1894), 137 Ind. 185, 36 N. E. 850; *Diven* v. *Johnson* (1889), 117 Ind. 512, 20 N. E. 428, 3 L. R. A. 308.

If the bill of sale introduced in evidence is a written contract within the meaning of the rule above recited, it must necessarily follow that the court erred in admitting testimony as to a parol warranty entered into prior to the execution of the bill of sale; but if the circumstances under which the bill of sale was executed were such as to show that it was not intended to embody the terms and conditions of the contract between the parties by which they were to be governed and controlled in carrying out their contract, then the rule would not apply. A contract has been defined 4. to be an agreement between two or more persons, based on a sufficient consideration, to do or to refrain from doing some particular thing. By the terms of a contract, whether written or in parol, the parties become obligated to do or to perform the acts stipulated on their part to be performed, and these obligations remain in force on the parties to the contract until the contract has been terminated in some manner recognized by law. When the contract has been terminated, both parties are thereby released from all obligations thereunder. One of the recognized means of terminating a contract is by performance, and

when a contract has been fully performed, all parties are released from any further obligations thereunder, and the contract ceases to exist.

In this case it appears from the evidence that a contract of some kind was entered into between the parties in reference to an exchange of personal property. In pursuance of this contract, appellee delivered to appellants a stock of goods, and appellants paid appellee $500 in cash, and delivered to him an automobile and the horse. The contract was thus fully performed on both sides, and was thereby terminated. No written evidence of the contract existed at or before the time of its termination. All of the acts done by both parties, in carrying out the contract in question, were done in pursuance of a contract, the terms of which at the time rested entirely in parol. The bill of sale introduced in evidence was executed at a time after the contract had been terminated, and when there was no contract between the parties which could be merged into a written instrument. It was not, therefore, a written contract. At most it could be nothing more than a statement in writing of the terms of a preëxisting parol contract, which had been fully performed and terminated. If this bill of sale had been executed while the contract was still subsisting, and before it had been terminated by complete performance, it would then have constituted the sole repository of the agreements between the parties, and would have been the only evidence of the terms of the contract.

The bill of sale introduced in evidence was prepared by appellee and signed by appellant Smith. It contained a recital of the terms of the preëxisting verbal contract, as the parties at the time understood and remembered them. It was some evidence of the terms of the parol contract which had been previously performed and terminated, but it was not the sole evidence of such contract, as would have been the case had it been executed while the contract was still subsisting and unperformed. Suppose that a horse is sold,

delivered and settled for under the terms of a parol contract which provides for no warranty, and that afterwards the seller gives to the purchaser a written bill of sale containing a warranty as to the soundness of the horse. Such a warranty, having no consideration to support it, would not be binding on the seller, and it is quite apparent, we think, that he would not be precluded from showing by parol that the writing containing the warranty was executed after the contract of sale had been terminated by performance, and that the parol contract of sale did not provide for such a warranty. 2 Mechem, Sales §1247; *Summers* v. *Vaughan* (1871), 35 Ind. 323, 9 Am. Rep. 741; *C. Aultman & Co.* v. *Kennedy* (1885), 33 Minn. 339, 23 N. W. 528, *McGaughey* v. *Richardson* (1889), 148 Mass. 609, 20 N. E. 202.

We are of the opinion, therefore, that the contract under which the parties acted, as disclosed by the evidence in this case, rested in parole, and that the court did not err in admitting parol testimony as to its terms.

Our attention is called to the cases of *Claypool* v. *Jaqua* (1893), 135 Ind. 499, 35 N. E. 285, and *Moore* v. *Harrison* (1901), 26 Ind. App. 408, 59 N. E. 1077, and counsel for appellants claim that these cases announce a principle at variance with the conclusion reached in this case. Both of these cases involved contracts made in consideration of marriage. Such contracts fall within the provisions of our statute of frauds, and can be proved only by some note or memorandum signed by the party to be charged. §7462 Burns 1908, §4904 R. S. 1881; *Flenner* v. *Flenner* (1868), 29 Ind. 564; *Brenner* v. *Brenner* (1874), 48 Ind. 262; *Claypool* v. *Jaqua, supra.* In each of the cases cited and relied on by appellants, the contract in consideration of marriage was entered into by parol prior to marriage, and after marriage a written memorandum evidencing the terms of the contract was prepared and signed by the party to be charged. It was held in each of these cases that the written memorandum, prepared and signed after the marriage, furnished the

written evidence of the contract required by the statute of frauds. All parol evidence was excluded, because such contracts cannot be established by parol testimony; they must be established entirely by written evidence as required by the statute.

Where an action is brought to enforce a contract governed by the statute of frauds, a written memorandum, evidencing the terms of such contract, introduced in 6. evidence at the trial, is sufficient to establish it, regardless of whether such memorandum was made before or after the contract was performed. What the statute requires to establish such contracts is written evidence, and no other character of evidence is admissible. When the contract sought to be enforced is not governed by the statute of frauds, however, this rule does not apply. The contract sued on in this case is not governed by the statute of frauds, and for this reason the cases relied on by appellant are not controlling.

Appellants do not contend that the evidence introduced at the trial of this case is insufficient to show a parol warranty. Their sole contention on this point, as we understand it, is that the written bill of sale introduced in evidence does not establish the warranty pleaded, and that parol evidence was inadmissible for such purpose. What we have already said disposes of this contention.

Appellants object to certain instructions given to the jury at the trial. The first one objected to is instruction one, given by the court of its own motion. This instruction 7. is, in the main, correct, although it is not very accurately worded. In view of the evidence and the other instructions given, we think that the jury was not misled thereby.

Instructions eight and ten, given at the request of appellee and objected to by appellants, are both clearly erroneous. 8. These instructions relate to the counterclaim of appellants, which was based on the alleged

fraudulent representations of appellee in reference to the stock of merchandise traded to appellants. The representations alleged to be false and fraudulent were: (1) That the stock of clothing was fresh, new, up to date, of the prevailing fashion and suited to the market and adapted to the trade at Amboy; (2) that the invoice of said stock of clothing, produced and exhibited to appellants' agent to induce the sale, was a true and correct invoice of said stock of goods, and that the values therein shown were the true and correct values of such goods at wholesale.

Instruction eight is as follows: "If you find from the evidence that the goods in question and referred to in the cross complaint and counter claim were traded to the said defendant Hardware Company on the basis of an inventory thereof delivered by plaintiff to said defendant or its agent and upon the basis of the prices therein contained and that the plaintiff told its said agent the kind and character of invoice and prices contained therein before the trade was consummated, then in such case your verdict should be for the plaintiff, Walter D. Hunt, on the cross complaint or counter claim." Under this instruction, if the jury found that the stock of merchandise was traded on the basis of an inventory, and that plaintiff told defendants' agent the kind and character of the invoice and the prices contained therein, then there could be no recovery on the counterclaim. If this were the law, there could be no recovery on the counterclaim, even though the jury found that the inventory was false as to the quantity of goods, and that the prices stated therein were not the correct wholesale prices of such goods, and further found that plaintiff fraudulently represented that the invoice was true and correct, both as to the quantity of the goods and the prices stated, and all other facts essential to a recovery on this theory. Appellee contends that the instruction was intended to mean, and that the jury understood it as meaning, that there could be no recovery on the counterclaim, if the stock of merchandise was traded

on the basis of an invoice and the prices therein contained, and that the plaintiff correctly and truly stated to the agents of defendants the kind and character of the invoice and the prices contained therein. We are not satisfied that the jury so understood the instruction, at least, it is so uncertain in its meaning as to be likely to mislead the jury in this regard. The instruction is open to another objection. It disregards the alleged fraudulent representations in reference to the goods being fresh, new, up to date, of the prevailing fashion, and suited to the market and adapted to the trade at Amboy. The jury was authorized by this instruction to find against the defendants on their counterclaim, without giving any consideration to evidence tending to prove a cause of action for these alleged fraudulent representations. Even though the instruction were susceptible of the meaning claimed for it by appellants, its effect was to tell the jury that if appellee told the truth in one of the representations alleged to have been false and fraudulent, there could be no recovery, although other material fraudulent representations, alleged in the counterclaim, were proved by a preponderance of the evidence.

Instruction ten is as follows: ''Before you can find for the defendant on its counterclaim, you must first find that the plaintiff made false statements and representations about the goods as alleged, and second, you must also find that the said defendant relied upon said statements and representations to its injury, and third, you must find the price and value given for the same and value of the same. If either one of these three facts are not shown, your verdict should be for the plaintiff, Walter D. Hunt, on the counterclaim.'' The jury was told by this instruction that before it could find for the defendants on the counterclaim in question, it must find the price and value given for the stock of goods, and if this were not shown, it must find for the plaintiff. In an action of deceit in this State, the value of the consideration exchanged for

the property sold by alleged fraudulent representations is not a material fact, and need not be pleaded or proved. It was error, therefore, to require as a prerequisite to a verdict in favor of the defendants on their counterclaim that it should prove the price and value given for the goods in reference to which the alleged fraudulent representations were made. The measure of damages in such a case is the difference between the value of the goods as they actually were, and their value had they been as represented. The measure of damages is not the difference between the value of the goods and the consideration exchanged for them. *McAroy* v. *Wright* (1865), 25 Ind. 22; *Nysewander* v. *Lowman* (1890), 124 Ind. 584, 24 N. E. 355; *Brier* v. *Mankey* (1911), 47 Ind. App. 7, 93 N. E. 672.

For error in giving instructions eight and ten requested by appellee, the judgment is reversed, with directions to grant a new trial.

Judgment reversed.

Note.—Reported in 98 N. E. 841. See, also, under (1) 3 Cyc. 388; (2) 38 Cyc. 1884; (3) 9 Cyc. 763; 17 Cyc. 596; (4) 9 Cyc. 241; (5) 35 Cyc. 120; 17 Cyc. 734; (6) 20 Cyc. 317; (7) 38 Cyc. 1782, 1809; (8) 35 Cyc. 483; (9) 35 Cyc. 468. As to the rule generally respecting parol evidence to vary written instruments, see 56 Am. St. 659. As to parol evidence to modify or explain a bill of sale, see 19 Ann. Cas. 541.