## SOCIETY OF MISSIONARY CATECHISTS OF OUR BLESSED LADY OF VICTORY *v.* BRADLEY.

[No. 16,844. Filed October 20, 1942. Rehearing denied December 2, 1942. Transfer denied December 28, 1942.]

*Bowers, Feightner & Palmer,* of Huntington, for appellant.

*O'Malley & Carlson,* of Huntington, for appellee.

BLESSING, J.—On the 23rd day of November, 1927, Katheryn I. McNamara, appellee's decedent, entered into the following agreement with the appellant, the

Society of Missionary Catechists of Our Blessed Lady of Victory:

"This Agreement, made and entered into this 23rd day of November in the year nineteen hundred and twenty-seven, by and between Katheryn I. McNamara of Chicago, party of the first part, and the Society of Missionary Catechists of Our Blessed Lady of Victory, of Santa Fe, New Mexico, a corporation duly incorporated under the laws of the State of New Mexico, party of the second part,

Witnesseth:

"1. That whereas the said Katheryn I. McNamara, party of the first part, has this day paid to the said Society of Missionary Catechists of Our Blessed Lady of Victory, party of the second part, the sum of Two Thousand dollars ($2,000.00).

"2. Now in Consideration of the same, the said party of the second part agrees to pay to the said party of the first part, during her lifetime, interest on the said sum of Two Thousand Dollars at the rate of six per cent (6%) per annum, payable semi-annually on the first day of January and the first day of July of each year.

"3. Upon the death of Katheryn I. McNamara, party of the first part, said sum of $2,000 shall become and remain thenceforth the absolute property of said Society of Missionary Catechists of Our Blessed Lady of Victory.

"4. Upon sixty (60) days notice given to the said party of the second part by said party of the first part, said party of the second part will return to the said party of the first part, in whole or in part, said principal sum of Two Thousand dollars.

"In testimony whereof the said party of the first part has hereunto set her hand and affixed her seal, and the said party of the second part has caused its corporate seal to be hereunto affixed and attested by the signatures of Rev. J. J. Sigstein, its President." (Signatures omitted.)

On July 1, 1929, the same parties entered into a second contract, the same as the one above set out except the amount involved which was $500.

Appellee's complaint was in two paragraphs, the first paragraph seeking recovery for money had and received, and the second seeking recovery on the two contracts involved. To this complaint appellant filed a demurrer, which demurrer was overruled. Appellant thereafter filed its answer in four paragraphs. The cause was tried by the court, and judgment was rendered in favor of the appellee in the sum of $3,137.50 principal and interest. Appellant then filed a motion for new trial. Said motion was thereafter overruled.

Appellant charges error by the court in overruling appellant's demurrer to each paragraph of complaint and in overruling appellant's motion for a new trial.

The evidence stipulated by the parties discloses that upon the signing of the first instrument above referred to, the sum of $2,000 was turned over to appellant by appellee's decedent, and that upon the signing of the second instrument, the sum of $500 was turned over to appellant by said appellee's decedent. On August 3, 1930, said Katheryn McNamara requested a return of part of said money in the sum of $600, and appellant returned the $600 to her on the same day. By stipulation the $600 paid the $500 contract in full and paid $100 on the $2,000 contract, and the interest on the $500 contract was paid to August 3, 1930. It is also stipulated that interest at the rate of 6 per cent on the balance of $1,900 was paid by appellant up to July, 1930.

Katheryn McNamara died on the 17th day of November, 1930, and thereafter no interest was paid by appellant, and no further payments were made by appellant to decedent's representative, although said representative made demand for the return of said money in 1931.

The undisputed evidence also discloses that appellant is a charitable institution, having as its purpose the dissemination of religion and aiding the underprivileged. Appellee's decedent knew the character of the charities in which the appellant is engaged.

One of the contentions of appellant is that these contracts are valid and that on the death of appellee's decedent, the appellant was entitled to retain whatever balance remained in its hands.

The appellee takes the position that the contracts are testamentary in character, without consideration, are promissory gifts, and that appellant is liable for the principal not demanded in the lifetime of appellee's decedent, and that it is the duty of appellee as administratrix of her decedent's estate to collect it together with interest thereon.

We cannot agree with the contention that the contracts are testamentary in character. Both of these contracts went into effect and became operative upon delivery and during the lifetime of Katheryn McNamara and not at her death. They were given for money acknowledged to be received from appellee's decedent at the time of the execution of the contracts, and the obligations of appellant were to be performed during the lifetime of appellee's decedent and not after her death.

On receipt of the money from appellee's decedent, the appellant was free to do with it as it pleased. It was not required to preserve it as a special fund out of which to meet such demands as said decedent might make pursuant to the terms of the contract. The fact that appellant was required, during the lifetime of said decedent, to reimburse her for such part of the principal of the contracts as she demanded, after the required notice, did not prevent the passing of the title of the

money delivered to appellant at the time the agreements were executed.

"The essential distinction between a contractual obligation and a testamentary disposition is that the contract contemplates performance, in part at least, during the lifetime and vests some quantum of present interest in the other party." *In re Murphy's Estate* (1937), 191 Wash. 180, 190, 71 P. (2d) 6, 11. ". . . So, although an agreement involves or effectuates a disposition of property belonging to a party thereto, it is a valid contract, and is not a will, where it contemplates performance, in part at least, during his lifetime, or vests a present interest in the other, . . . " 68 C. J. Wills, § 238, p. 618.

Title to the money having passed, and all of the obligations of the appellant to the decedent required to be performed in the lifetime of said decedent, we conclude that the contracts in question are not testamentary in character. *In re Alms' Estate* (1922), 153 Minn. 256, 190 N. W. 253.

Neither do we concur in appellee's contention that the agreements are invalid for lack of consideration to support them. To paraphrase the language used in the case, *In re Alms' Estate, supra:* Appellee's decedent delivered to appellant the respective sums of $2,000 and $500 at the time the contracts were executed, and as a consideration for each of the contracts, accepted the obligations assumed by the appellant. The contracts were executory only on the part of appellant. They were fully executed by appellee's decedent when she paid the money for she made no engagement to do or perform anything thereafter. The appellant paid the interest according to the terms of the contract, and likewise returned to appellee's decedent

all of the money she had demanded. Appellant was not in default at the time of the death of Katheryn McNamara. While there was accrued interest from July 1, 1930 to the date of her death in November, it was not due under the terms of the contract until January 1, 1931. An executed contract is valid even if there be no consideration for it. *In re Alms' Estate, supra,* and cases therein cited. See also Bishop on Contracts, 2nd Ed., § 80 et seq., p. 37; *Walker* v. *Dixon Crucible Co.* (1890), 47 N. J. Eq. 342, 20 A. 885; *National City Bank of Chicago* v. *Wagner* (1914), 216 F. 473, 132 C. C. A. 533.

Appellee's decedent did not make a gift outright to the appellant. She delivered the money and exacted certain obligations from the appellant. These arrangements appear to have been perfectly satisfactory to the parties. As was said at page 259 in the case of *In re Alms' Estate, supra,* "As the undertakings on the part of the child were satisfactory to him and all that he exacted, their sufficiency as a consideration for the transfer is not open to question." If, on the other hand, the validity of these contracts is dependent on a sufficient consideration, we are of the opinion that there was a sufficient consideration to support them. Appellant had no choice in returning any of the funds that were delivered to it. Unless appellee's decedent demanded a return, the appellant was bound to pay her 6 per cent interest on the principal amounts as long as she lived. The appellant was also required to repay said decedent upon 60 days notice the whole or any part of the money it had received from her, and the appellant was bound to this even though the amount returned and the accumulated interest exceeded the principal sums delivered to it by said decedent. The imposition of these contractual obligations constitute a sufficient consideration to support the contracts.

We are, therefore, of the opinion that the contracts here involved are valid and subsisting contracts and that appellant is entitled to the remainder of the principal it held at the date of the death of Katheryn McNamara.

Appellant contends that there was no interest due appellee's decedent at the time of her death but we find no basis as disclosed by the record for such contention.

The stipulation of the parties shows that the interest on the $500 contract was paid to August 3, 1930, and that the interest on the $2,000 contract was paid to July, 1930. Both contracts provided for the payment of interest during the lifetime of appellee's decedent. According to these facts, there was accrued interest recoverable by appellee in the sum of $52.36.

The facts in this case being uncontroverted, we see no necessity for a new trial. Judgment of the lower court is therefore reversed with instructions to enter judgment for the plaintiff in the sum of $52.36, with interest thereon since the date of the death of appellee's decedent. The costs of this appeal are to be taxed against appellee.

NOTE.—Reported in 44 N. E. (2d) 209.